**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01462-RM-NYW

SHAWN MESS, TIMOTHY MOSS, and COREY REEVES,
individually and on behalf of all others similarly situated,

      Plaintiffs,

    v.

AQUILA SERVICES CORPORATION,
a Wyoming corporation doing business as "Denver Metro Protective Services,"

      Defendant.

---

**UNOPPOSED MOTION FOR ORDER PRELIMINARILY APPROVING
PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT**

---

      Plaintiffs Shawn Mess ("Mess"), Timothy Moss ("Moss"), and Corey Reeves ("Reeves") (collectively, "Plaintiffs"), with the consent of the Defendant, Aquila Services Corporation d/b/a Denver Metro Protective Services ("Defendant"), hereby move the Court to preliminarily approve the settlement reflected in the Settlement Agreement between the Plaintiffs and the Defendant, which is attached to this Motion as Exhibit 1, and state as follows:

<u>**CERTIFICATE OF CONFERRAL**</u>

      Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel for the Plaintiffs certify that they conferred with the Defendant's counsel regarding this Motion before it was filed. The Defendant does not oppose the relief sought in this Motion.

**I.      <u>INTRODUCTION</u>**

      In this putative class and collective action, the Plaintiffs allege that the Defendant violated

Colorado wage and hour law and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA")

by: (1) failing to pay security officers and patrol officers for the time they spent attending trainings;

and (2) failing to pay patrol officers overtime compensation for hours worked over 40 per week.

The Plaintiffs and the Defendant (collectively, "Parties") participated in a Settlement Conference

with the Honorable Magistrate Judge Nina Y. Wang on October 25, 2021 and as a result of that

Conference, agreed to settle the claims that were brought or could have been brought in this action

on November 5, 2021. Subsequently, the Parties memorialized their agreement in the Settlement

Agreement ("Agreement") that is attached to this Motion as Exhibit 1.

Pursuant to the Agreement, the Plaintiffs seek: (1) preliminary approval of the Settlement;

(2) certification of a class consisting of 960 security and patrol officers who worked for the

Defendant between January 1, 2019 and November 12, 2021 ("Colorado Class") under Fed. R.

Civ. P. 23 ("Rule 23"); [1] (3) certification of an FLSA collective consisting of 29 patrol officers

who worked for the Defendant between March 2020 and November 12, 2021 ("FLSA Collective")

under 29 U.S.C. § 216(b) ("FLSA Section 216(b)"); (4) appointment of the Plaintiffs as Class and

Collective Representatives; (5) appointment of the Plaintiffs' undersigned counsel, HKM

Employment Attorneys LLP, as Class Counsel; (6) approval of Rust Consulting, Inc. ("Rust") as

Administrator; (7) approval of the notice, opt-out, and opt-in forms ("Notices") drafted by the

---

[1] In *Pilmenstein v. Devereux Cleo Wallace*, 2021 COA 59, 492 P.3d 1059 (Colo. App. 2021) *cert. denied*, No. 21SC425, 2021 WL 4943164 (Colo. Oct. 18, 2021), the Colorado Court of Appeals recognized that a Colorado employee may assert wage claims under either the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* **or** the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq. See* 492 P.3d at 1068-69 (Pawar, concurring). Thus, while the Plaintiffs maintain that claims made under the CMWA are likely subject to Colorado's general six-year statute of limitations, they have elected to settle their class claims under the two- or three-year statute of limitations that applies to claims brought under the CWA, C.R.S. § 8-4-122.

Parties and attached to this Motion as Exhibits 2 and 3; (8) authorization to send the Notices to the Colorado Class and the FLSA Collective during a 60-day notice period; and (9) an order setting a Final Fairness Hearing.

As explained below, preliminary approval of the Settlement is appropriate because the Court will "'likely be able to' 1) approve the proposed settlement under Rule 23(e)(2), and 2) certify the class for the purpose of entry of a judgment on the proposal." *See Murray v. Tips, Inc.*, No. 18-CV-00937-RM-KLM, 2020 WL 1852382, at *5–6 (D. Colo. Apr. 13, 2020) (citing Fed. R. Civ. P. 23(e)(1)(B), 4 W. Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2019), and *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)).

The Settlement is "fair, reasonable, and adequate" because: (A) the Plaintiffs and their counsel have adequately represented the Colorado Class and the FLSA Collective in this action; (B) the Settlement was fairly and honestly negotiated at arm's length and after a meaningful exchange of information; (C) "the relief provided for the class is adequate," taking into account the "serious questions of law and fact" that place the outcome of this litigation in doubt; "the costs, risks, and delay of trial and appeal;" the proposed method of distribution; the proposed attorney's fees; and the Settlement Agreement; (D) the Parties' Agreement "treats class members equitably relative to each other;" and (E) the Parties judge the settlement to be fair, reasonable, and adequate. *See Murray*, 2020 WL 1852382, at *5–6 (citing Fed. R. Civ. P. 23(e) and *Rutter*, 314 F.3d at 1088). In addition, the Colorado Class meets the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3), and thus class certification is appropriate.

Moreover, the putative members of the FLSA Collective are "similarly situated," and therefore, certification of the collective is appropriate under FLSA Section 216(b). *See Murray*,

2020 WL 1852382, at *5–6 (citing *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1102-05 (10th Cir. 2001)).

The Notices and notice procedures contemplated by the Agreement fully satisfy the requirements of Rule 23 and the FLSA. *See* Fed. R. Civ. P. 23(c)(3) and (e); *Grady v. Alpine Auto Recovery LLC*, No. 15-CV-00377-PAB-MEH, 2015 WL 3902774, at *3 (D. Colo. June 24, 2015) (Notice to FLSA collective is appropriate if it "'provide[s] accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate"). Accordingly, those Notices and procedures should be approved, notice sent to the members of the Colorado Class and FLSA Collective, and a Final Fairness Hearing should be scheduled in this matter.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Defendant is a Wyoming corporation that provides security guard and patrol services to customers drawn from the public. Plaintiff Mess was employed by the Defendant as a patrol officer from June 2018 until June 2020. Plaintiff Moss was employed by the Defendant as a security officer in April 2021. Plaintiff Reeves was employed by the Defendant as a security officer in March and April 2021.

The Defendant employed a total of 960 security and patrol officers during the period from January 1, 2019 to November 12, 2021 ("Colorado Class Members").[2] The Plaintiffs allege that

---

[2] As noted above, the Plaintiffs have elected to resolve their claims under the Colorado Wage Act and its two- or three-year statute of limitations. *See supra* Note 1; *see also Pilmenstein*, 492 P.3d at 1068-69 (Pawar, concurring) (recognizing that Colorado employee asserting claim for unpaid minimum wages may sue under either the Colorado Wage Act or the Colorado Minimum Wage Act).

they and each of the other Colorado Class Members were required to participate in 3-4 days of mandatory training at the start of their employment, for which they received no compensation. The Defendant denies these allegations, and further denies that the time at issue was "time worked" under the FLSA and/or Colorado Wage and Hour Law.

The Defendant employed a total of 29 patrol officers during the period from March 1, 2020 to November 12, 2021 ("FLSA Collective Members"). The Plaintiffs allege that on or around March 1, 2020, the Defendant reclassified Mess and the other FLSA Collective Members as "exempt" and stopped paying them overtime for hours that they worked over 40 per week. The Defendant denies these allegations as well.

On June 1, 2021, Plaintiffs Moss and Reeves initiated this action by filing their Individual, Collective, and Class Action Complaint and Jury Demand. ECF No. 1. On June 14, 2021, the Plaintiffs filed their First Amended Individual, Collective, and Class Action Complaint and Jury Demand ("Amended Complaint"). ECF No. 11.

As reflected in the Amended Complaint, the Plaintiffs claim that the Defendant violated Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq.*, and those Acts' implementing regulations, 7 C.C.R. 1103-1 (collectively, "Colorado Wage and Hour Law"), and the FLSA by: (1) failing to pay minimum wages for the time employees spent participating in 3-4 days of mandatory trainings; and (2) failing to pay patrol specialists overtime compensation at a rate of one and one-half times their regular rates of pay for hours they worked over 40 per week during the period from March 1, 2020 to November 12, 2021. ECF No. 11 ¶¶ 6-23. Individually, Plaintiff Mess also alleges that the Defendant retaliated against him in violation of the FLSA and committed

the torts of wrongful termination in violation of public policy and negligence *per se* by terminating him for complaining about its wage policies. *Id.* ECF No. 11 at 24-26.

On July 23, 2021, the Plaintiffs filed the Motion for Conditional Certification, asking the Court to conditionally certify the Plaintiffs' FLSA claims under FLSA Section 216(b) and authorize notice to potential collective members. ECF No. 27. On August 27, 2021, the Defendant filed its Brief in Opposition to the Plaintiffs' Motion for Conditional Certification. ECF No. 39.

On August 8, 2021, the Defendant filed a Motion for Partial Dismissal, asserting that the Court should apply the two- or three-year statute of limitations from the Colorado Wage Act, instead of the six-year statute of limitations this Court held applies to claims brought under the Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2018), in *Sobolewski v. Boselli & Sons*, LLC, 342 F. Supp. 3d 1178, 1189-89 (D. Colo. 2018), to the Plaintiffs' and Class Members' Colorado minimum wage claims. ECF No. 31.

On October 4, 2021, the Parties filed a Joint Motion Seeking Order to Set Settlement Conference and to Stay Discovery and Motions Briefing Pending Outcome of Settlement Conference. ECF No. 42. The Court granted that Motion in part, and scheduled the Conference for November 2, 2021. ECF Nos. 44-45. Prior to the Settlement Conference, the Parties engaged in informal discovery, which included the Defendant's production of a significant amount of information regarding its security and patrol officers, and the hours worked and wages paid to those officers.

The Parties participated in good faith in the Settlement Conference on November 2, 2021, which lasted from 9:00 a.m. to approximately 9:00 p.m. Thereafter, the Parties continued their settlement discussions, and due to Judge Wang's efforts, expertise, and assistance, the Parties

agreed to settle on November 12, 2021. ECF No. 49.

### III.      PROPOSED SETTLEMENT AND NOTICE

As reflected in the Settlement Agreement (Exhibit 1), the Parties propose the following

Settlement:

### A.      CLASS AND COLLECTIVE CERTIFICATION

The Parties stipulate to preliminary and final certification of the Colorado Class, which

consists of the 960 individuals, under Fed. R. Civ. P. 23:

> ALL INDIVIDUALS WHO WORKED FOR DENVER METRO PROTECTIVE
> SERVICES AS SECURITY OFFICERS AND/OR PATROL OFFICERS
> BETWEEN JANUARY 1, 2019 AND NOVEMBER 12, 2021.

The Parties further stipulate to the appointment of the Plaintiffs as Class Representatives

for the Colorado Class. The Plaintiffs were employed by the Defendant during the relevant period

– Mess as a patrol officer and the other Plaintiffs as security officers – and they were allegedly

subjected to the same policies/practices that are alleged to have violated the rights of the other

Colorado Class Members.

The Parties also stipulate to preliminary and final certification of the FLSA Collective,

which consists of 29 individuals, under 29 U.S.C. § 216(b):

> ALL INDIVIDUALS WHO WORKED FOR DENVER METRO PROTECTIVE
> SERVICES AS PATROL OFFICERS BETWEEN MARCH 1, 2020 AND
> NOVEMBER 12, 2021.

The Parties further stipulate to the appointment of Plaintiff Mess as the Collective

Representative. Mess worked for the Defendant as a patrol officer during the relevant period, and

was allegedly subjected to the same overtime violation that is alleged to have violated the rights

of the other FLSA Collective Members.

The undersigned counsel for the Plaintiffs, Claire Hunter, Shelby Woods and Adam Harrison of HKM Employment Attorneys LLP ("Class Counsel"), seek appointment as Class Counsel for the Colorado Class and the FLSA Collective. Class Counsel are experienced litigators who have litigated dozens of wage and hour cases and class actions. They are well-versed in the peculiarities and ever-evolving nature of the FLSA and Colorado Wage and Hour Law, and they have zealously advocated for the Plaintiffs and all other Members of the Class and Collective in this action.

B.     **TERMS OF PROPOSED SETTLEMENT**

Subject to preliminary and final approval by this Court, the Parties have agreed to settle on the terms in their attached Settlement Agreement:

> (1) The Defendant will pay a Total Settlement Amount of Two Hundred Forty-Nine Thousand, Four Hundred Ninety-Nine Dollars ($249,499.00), to the Plaintiffs, the Colorado Class, and the FLSA Collective to resolve all claims that were brought or that could have been brought in this action. From this amount:
>
>> a) One Hundred Sixty-Five Thousand, Six Hundred Eighty-one Dollars ($165,681.00) will be paid to the Colorado Class. The Parties anticipate that after attorney's fees, this amount will result in each Colorado Class Member receiving approximately 1.5 days of pay at a rate of $14.77 per hour, [3] approximately $120.00;[4]

---

[3] This rate is the Denver minimum wage in effect at the time of Settlement.

[4] This amount will be higher if Class Members opt-out, since the funds allocated to opt-outs will

b) Thirteen Thousand Dollars ($13,000.00) will be paid to the FLSA Collective. The Parties intend that this amount, less any attorney's fees approved by the Court, will be distributed evenly[5] among the FLSA Collective Members;

c) Class Counsel will seek service awards of Five Thousand Dollars $5,000.00 for each of the three Plaintiffs ($15,000.00 total);

d) Separate from the relief proposed for the Class and Collective Members, the Parties agree to settle Mess's individual claims of FLSA retaliation, wrongful termination against public policy, and negligence per se for Thirty-Seven Thousand, Five Hundred Dollars ($37,500.00), less attorney's fees;

e) Class Counsel will file a motion seeking the approval of no more than Sixty-Eight Thousand Dollars ($68,000.00) in attorney's fees, and costs of Eight Hundred Eighteen Dollars ($818.00); and

f) The Parties seek the Court's approval to utilize Rust Consulting, Inc, an experienced class administration company, to serve as Administrator and to distribute the Notices and settlement funds to

---

be reallocated to the other Class Members prior to the filing of the Plaintiffs' Motion for Final Approval.

[5] Class Counsel intends to move the Court to approve attorney's fees representing one third (1/3) of this amount, or $4,333.00. If that motion is granted, and all 29 Collective Members opt in, each Member will be paid $298.00 (overtime premiums for approximately 40 hours); if 15 Members opt in, each Member will be paid $577.80; if 9 Members opt in, each member will be paid $960.00, *etc.*

the Class and Collective Members. If Rust is approved, Seventeen Thousand Five Hundred Dollars ($17,500.00) will be paid from the Total Settlement Amount to Rust;

(2)  For any amounts allocated to a potential Colorado Class Member who opts out during the 60-day notice period proposed in the Agreement, those funds will be re-allocated to the other Class Members prior to final approval. For any checks that are not cashed by Class Members following final approval, those funds will revert to the Defendant 180 days after the initial date on which such checks are sent out;

(3) The Plaintiffs will release all of the claims they brought or could have brought against the Defendant. The other Colorado Class Members who do not opt out of the Settlement will release all claims related to payment/nonpayment of wages, compensation, overtime compensation, rest periods, meal periods, etc. for any time they spent in trainings while employed by the Defendant. The Collective Members who opt in to the Settlement will release all wage/compensation claims that were brought or that could have been brought in this action; and

(4) The Defendant has entered into the Agreement without any admission of liability. The Defendant expressly denies all of the Plaintiffs' claims, and further denies that it engaged in any violation of the FLSA or Colorado Wage and Hour Law, or any other form of wrongdoing toward the Plaintiffs, the Colorado Class Members, or the FLSA Collective Members. The

Defendant has entered into the Settlement for the sole purpose of avoiding the expense, risk, and disruption to its business of continued litigation.

Class Counsel, who are experienced in wage and hour class actions, have carefully investigated the Plaintiffs' and the Class Members' claims, and the legal and factual bases for these claims. They have considered the positions and arguments of the Defendant in this litigation, the strengths and weaknesses of the Parties' positions, and the information exchanged by the parties in informal discovery. Class Counsel have also taken into consideration the precarious financial situation of the Defendant who, like many other small businesses in Colorado's security industry (and many other service industries) was negatively impacted by the global pandemic during the past two years. Based on their knowledge, experience, investigation, and analysis of this case, Class Counsel has concluded that the Settlement, which provides for recovery of approximately 50% of the wages alleged to be due to the Colorado Class and 40 hours of overtime premiums for the FLSA Collective Members, is fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Class and Collective Members.

The Defendant, while continuing to deny the Plaintiffs' claims and while maintaining that it has complied with the FLSA and Colorado Wage and Hour Law at all times, agrees that the settlement is fair and reasonable.

## C.    PROPOSED NOTICE FORMS AND PROCEDURES

The Parties have drafted the Rule 23 Notices attached as Exhibit 2 to be sent to the Colorado Class, and the FLSA Notices attached as Exhibit 3 to be sent to the FLSA Collective – a group that is coextensive with the Class. Both Notices describe, as clearly as possible, the nature of this case, the nature of the Class and Collective, and the manner in which Class members may

exclude themselves, object, and/or participate in the Final Fairness Hearing. The Notices also explain that any Class Member who does not exclude themselves will be bound by the Settlement if/when the Settlement is approved by the Court. *See* <u>Exhibits 2</u> and <u>3</u>.

The FLSA Notices are mostly identical to the Rule 23 Notices, with the addition of information that explains the manner in which putative Members may opt in, if they choose to do so.[6] The differences between the two Notices are redlined for the Court's review.

As reflected in the Agreement, the Parties propose the following procedures for notice, the filing of consents, exclusion, objections, and final approval:

> (1) Within twenty-one (21) days of the Court's order granting preliminary approval and authorizing notice to the Colorado Class and the FLSA Collective, the Defendant shall provide the Administrator with lists containing the names, addresses, phone numbers (where possible), and email addresses (where possible) of all potential Colorado Class Members and FLSA Collective Members;

> (2) Within twenty-one (21) days of receiving the lists described above, the Administrator shall send the Rule 23 Notices, as approved and/or modified by the Court, to the Colorado Class Members. The Class Members shall have Sixty (60) days to opt out of or object to the Settlement, if they wish to do so, by following the instructions in the Rule 23 Notices;

---

[6] As another court in this District explained in *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1117 (D. Colo. 2017), the contemporaneous sending of notice regarding an FLSA opt-in collective and a Rule 23 opt-out class action can be confusing to class members. The undersigned counsel believe that such confusion can be minimized and most practically addressed by including the explanation of FLSA Section 216(b) only to the 29 FLSA Collective Members.

(3) Also within Thirty (30) days of the Court's order granting preliminary approval, the Administrator shall send the FLSA Notices, as approved and/or modified by the Court, to the FLSA Collective Members. The Collective Members shall have Sixty (60) days to opt in by filing the Consent to Join form included in Exhibit 3;

(4) For any Notice that is returned undeliverable, the Administrator shall perform skip tracing and engage in other efforts consistent with the industry standards of the class administration industry to obtain additional contact information and re-send the Notice;

(5) Within Thirty (30) days of the end of the 60-day notice period, Class Counsel shall file unopposed motions seeking final approval of the Settlement and approval of their reasonable attorney's fees and costs; and

(6) A Final Fairness Hearing should be scheduled to occur no earlier than Forty-Five (45) days from the end of the 60-day notice period.

Class Counsel believe that the proposed notices and procedures are reasonably calculated to inform the potential members of the Colorado Class and the FLSA Collective of this action, their rights in regard to this action, and the manner in which they can exercise those rights, and that they provide the best notice practicable under the circumstances. *See* Fed. R. Civ. P. 23(c)(3) and (e); *Grady*, No. 15-CV-00377-PAB-MEH, 2015 WL 3902774, at *3.

## DISCUSSION

### A. REQUEST TO CERTIFY COLORADO CLASS UNDER RULE 23

As threshold matters, the Court must decide whether to grant class certification of the Colorado Class under Fed. R. Civ. P. 23. *See Murray*, 2020 WL 1852382, at *3; *Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-NRN, 2019 WL 3075339, at *5 (D. Colo. July 15, 2019). A party seeking class certification must show that the proposed class meets the prerequisites of Rule 23(a) and the requirements for one of the categories of lawsuits described in Rule 23(b). *See Murray*, 2020 WL 1852382, at *2-3 (citing *Shook v. El Paso Cnty.*, 386 F.3d 960, 971 (10th Cir. 2004) and *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009)).

The prerequisites of Rule 23(a) are that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "These requirements are frequently referred to as numerosity, commonality, typicality, and adequacy of representation." *Murray*, 2020 WL 1852382, at *3.

Under Rule 23(b)(3), a class may be certified if it meets the prerequisites of Rule 23(a) and "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," considering "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;" and "(C) the desirability or undesirability of concentrating the litigation of the claims in the particular

forum." *See id.* at *3-4 (holding that requirement in Rule 23(b)(3)(D) does not apply in the context of a class settlement) (citing *Harper v. C.R. England, Inc.*, 746 F. App'x 712, 720 (10th Cir. 2018)).

As discussed below, class certification is appropriate under Rule 23 because the proposed Colorado Class satisfies the prerequisites of 23(a) and the requirements of Rule 23(b)(3).

### 1. THE COLORADO CLASS SATISFIES THE PREREQUISITES OF RULE 23(A).

#### i. NUMEROSITY

The Colorado Class is sufficiently numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). "In determining whether a proposed Class meets the numerosity requirement a court may make 'common sense assumptions to support a finding that joinder would be impracticable.'" *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002); *cf. Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 477 (D. Md. 2014) (noting that "classes with as few as 25 to 30 members have been found to raise the presumption that joinder would be impracticable").

There are 960 security and patrol officers who worked for the Defendant between January 1, 2019 and November 12, 2021. Because joinder of that many individuals would be impracticable, the first prerequisite is met. *See* Fed. R. Civ. P. 23(a)(1).

#### ii. COMMONALITY

The second prerequisite is also satisfied because there are numerous questions of law and fact that are common to the Colorado Class. *See* Fed. R. Civ. P. 23(a)(2). "A finding of commonality requires only a single question of law or fact common to the entire class." *Valverde*, 2019 WL 3075339, at *4 (citing *Menocal v. GEO Group Inc.*, 882 F.3d 905, 914 (10th Cir. 2018); *cf. Lucas v. Kmart Corp.*, No. 99-CV-01923-JLK, 2006 WL 722163, at *2 (D. Colo. Mar. 22, 2006) ("[T]here may be varying fact situations among individual members of the class ... as long

as the claims of the plaintiffs and other class members are based on the same legal or remedial theory" (citing *Joseph v. Gen. Motors Corp.,* 109 F.R.D. 634, 639–40 (D. Colo. 1986)).

The common issues in this case include, but are not limited to: (1) whether the Class Members were paid the applicable minimum wage for all of the hours that they worked for the Defendant (*see* 7 C.C.R. 1103-1:9 (2020) ("If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply"); (2) whether the Class Members were paid minimum wages for the hours they spent in trainings at the start of their employment, and whether such trainings were "voluntary" or "mandatory" (*see* 29 C.F.R. §§ 785-27-28); (3) whether the time spent in such trainings was "time worked" (*see* 7 C.C.R. 1103-1, Rule 1.9) ("Time worked means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work")); (4) the statute of limitations that applies to the Class Members' claims (*see* C.R.S. § 8-4-122) (two- or three-year limitation under CWA); C.R.S. § 13-80-103.5(1) (general six-year limitation held to apply to minimum wage claims in *Sobolewski*, 342 F.Supp.3d at 1188-89 and *Cordova-Gonzalez v. TW Lath-N-Stucco, Inc.*, No. 21-CV-01617-CMA-KMT, 2021 WL 5086065, at *2 (D. Colo. Nov. 2, 2021); *see also Pilmenstein*, 492 P.3d at 1067-69 (recognizing that CMWA does not have an express statute of limitations); and (5) whether the Defendant's violations of Colorado Wage and Hour Law, if any, were "willful." *See* C.R.S. § 8-4-109(3)(c) (enhancing penalties if violation was willful); C.R.S. § 8-4-122 (extending statute of limitations from two to three years for willful violations).

### iii. TYPICALITY

The Colorado Class also satisfies the "typicality" prerequisite because "the claims or

defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). Typicality exists where "the claims of the class representative and class members are based on the same legal or remedial theory." *Valverde*, 2019 WL 3075339, at *4 (quoting *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1216 (10th Cir. 2014). Because the Plaintiffs allege to have been subject to the same policies and practices that are alleged for the rest of the Colorado Class Members, *i.e.*, the requirement to attend trainings at the start of their employment without compensation, the third prerequisite of Rule 23(a) is satisfied.

### iv. ADEQUACY OF REPRESENTATION

The Colorado Class also satisfies the fourth and final prerequisite of Rule 23(a) because "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). In examining whether the Plaintiffs and their counsel are adequate representatives, the Court must decide: (1) whether the plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Valverde*, 2019 WL 3075339, at *4 (citing *Rutter & Wilbanks*, 314 F.3d 1180, 1187–88). The second factor implicates "the experience and competence of the attorney representing the class." *United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of the upholding the class, subject to later possible reconsideration, or the creation of subclasses initially." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo.1998).

In this case, the Plaintiffs' interests are aligned with the interests of the Colorado Class.

Their claims are typical of those of the Class Members and as such, the Plaintiffs could only succeed on legal theories that would also lead to recovery for the Class Members. Neither the Plaintiffs nor their counsel are aware of any conflict of interest that exists between themselves and the Class Members. Additionally, Class Counsel are experienced litigators who have extensive experience in wage and hour class actions similar to this case.[7] As such, the "adequacy of representation" prerequisite, and indeed all of the prerequisites of Rule 23(a), are satisfied.

### 2. THE COLORADO CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(3).

The Settlement Class also satisfies the conditions in Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently

---

[7] The cases litigated by Class Counsel include, but are not limited to: *Finfrock v. DISH Network, LLC,* JAG Case No. 2021-0409A; *Mess v. Aquila Corporation*, No. 1:21-cv-01462-RM-NYW (D. Colo.); *Anderson v. WidespreadGanick, LLC*, No. 2021CV031699 (Den. Dist Ct.); *Simmons v. Isle of Capri Black Hawk, LLC*, No. 1:19-cv-00967-JLK (D. Colo.); *German v. Holtzman Enterprises, Inc.*, 19-cv-03540-PAB-STV (D. Colo.); *Price v. Vita Locators, LLC*, No. 1:20-cv-01868-CMA-SKC (D. Colo.); *Picknell v. Hard Rock Café International, Inc.*, No. 1:20-cv-03409-DDD-SKC (D. Colo.); *Barlow v. Westin DIA Operator, LLC*, No. 20-cv-01612-DDD-KLM (D. Colo.); *Jones v. Intrado Life & Safety, Inc.*, No. 1:20-DDD-NYW (D. Colo.); *Price v. The Murder Mystery Company, LLC*, No. 1:20-cv-1081 (W.D. Mich.); *Garechana v. Summit Subway, LLC,* 2019CV032622 (El Paso Dist. Ct.); *Williams v. Sabell's,* No. 2019CV031879 (Jefferson Dist Ct.); *Banton v. Board of Governors of the Colorado State University,* No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC,* No. 18CV33524 (Den. Dist. Co.); *Sciarcon v. Colorado Seminary,* No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile,* No. 2020CV030841 (Den. Dist. Ct.); *Pilmenstein v. Devereux Cleo Wallace,* No. 2017CV30319 (Jefferson Dist. Ct.) (affirmed by 2021 COA 59); *Ortez v. United Parcel Service,* No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary,* No. 17-cv-02074 (D. Colo.); *Gallagher v. Total Community Options, Inc.,* No. 2017CV030953 (Den. Dist. Ct.); *Collins v. DKL Ventures,* LLC, No. 16-cv-00070 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *VanPortfliet v. Carpet Direct Corporation*, No. 16-cv-00616 (D. Colo.); *Flannery v. Int Entertainment Consultants, Inc.*, No. 2016CV034325 (Den. Dist. Ct.); *Price v. Sprouts Farmers Market, LLC,* No. 16-cv-00855 (D. Colo.); *Crepeau v. PDQ Truck, LLC,* 1:15-cv-02750-CMA-MLC (D. Colo.) *Garrison v. Open Technology Solutions, LLC*, No. 2015CV030837 (Arapahoe Dist. Ct.); *Nesbitt v. FCHN, Inc.,* No. 14-cv-0090 (D. Colo.); and *Geiger v. Master United 12 LLC*, No. 14-cv-00240 (D. Colo.).

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In ruling on predominance under Rule 23(b)(3), the Court should determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016) (quoting *United Food & Commer. Workers Union*, 281 F.R.D. at 655. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Pliego*, 313 F.R.D. at 127.

The key issues in this case are common to the class, including: (1) whether the Class Members were paid the applicable minimum wage for all of the hours that they worked; (2) whether the trainings at issue in this case were voluntary or mandatory; (3) whether the time spent in such trainings was "time worked" under Colorado law; (4) the statute of limitations that applies to the Class Members' claims; and (5) whether the Defendant's alleged violations of Colorado Wage and Hour Law were "willful." Because these issues are amenable to class-wide resolution through generalized proof, the predominance standard is met. *See Pliego*, 313 F.R.D. at 127. The Plaintiffs and their counsel are not aware of any other action filed on behalf of a Member or Members of the Colorado Class, and no other Class Member has expressed or demonstrated an interest in individually controlling this case. Fed. R. Civ. P. 23(b)(3)(A)-(B). The District of Colorado is the ideal forum for the concentration of this litigation because the Defendant resides in this District and the Plaintiffs and the Class Members worked in Colorado. *See* Fed. R. Civ. P. 23(b)(3)(C); *see also Murray,* 2020 WL 1852382 at *3-4 (holding that requirement in Rule

23(b)(3)(D) does not apply in the settlement context).

Finally, the class action vehicle is the superior method for adjudicating this controversy because it involves small claims of hourly workers. Courts in the District of Colorado have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are unlikely to be otherwise pursued. *See, e.g., Maez v. Springs Automotive Group*, LLC, 268 F.R.D. 391, 397 (D. Colo 2010); Cook v. Rockwell International Corp., 181 F.R.D. 473, 482 (D. Colo. 1998).

Because the prerequisites of Rule23(a) and the requirements of Rule 23(b)(3) are satisfied, the Court should certify the Colorado Class.

## B. REQUEST TO CERTIFY FLSA COLLECTIVE UNDER FLSA SECTION 216(B)

Section 216(b) of the FLSA permits an employee to bring an action for unpaid federal minimum wages or overtime compensation "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). As this Court recognized in *Valverde* v. *Xclusive Staffing, Inc.*:

> Under *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001), a district court may apply a two-stage "ad hoc" process to determine whether putative collective action members were "similarly situated" for purposes of § 216(b). "At the initial "notice" stage, this Court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." If a movant meets this burden, the district court has discretion to facilitate notice to potential plaintiffs, such as ordering the employer to provide the names and addresses of current and former employees who may be eligible to participate in the collective action and authorizing court approved notice and consent documents be sent to such employees. The judicial system benefits of a collective action, however, depend on the employees receiving accurate and timely notice of the pendency of the collective action, so they can make informed decisions on whether to participate by consenting to become a party, *i.e.*, opt-in to the action.

2019 WL 3075339, at *3–4 (citing *Thiessen,* 267 F.3d at 1102 and *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-174 (1989). In deciding whether to certify an FLSA collective at the notice stage, "the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims." *Torres-Vallejo v. CreativExteriors, Inc.*, 220 F. Supp. 3d 1074, 1092 (D. Colo. 2016) (citing *Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 3929663, at *2 (D. Colo. June 25, 2015).

"Courts have generally found the question of whether a defendant improperly misclassified workers to avoid paying overtime compensation to be suitable for collective treatment at the initial stage." *Warren v. MBI Energy Servs., Inc., No.* 1:19-CV00800-RM-STV, 2020 WL 5640617, at *1 (D. Colo. Sept. 22, 2020). This question is at the center of the Collective Members' claims in this action.

In this case, preliminary certification of the FLSA Collective is appropriate because the Plaintiffs allege a "single decision, policy, or plan" that applied to all of the Collective Members, namely: the Defendant's alleged failure to pay overtime compensation for hours worked over 40 per week. *See* 29 U.S.C. § 207. The Collective Members are therefore "similarly situated" under Section 216(b), and the Court should allow notice to be sent to them so they can "make informed decisions on whether to participate by consenting to become a party." *See Murray*, 2019 WL 3075339, at *4.

## C. REQUEST TO PRELIMINARILY APPROVE SETTLEMENT

To be valid, a class action settlement must be approved by the Court. Fed. R. Civ. P. 23(e). "The review and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval,

the proposed class settlement, and the proposed class notice; (2) dissemination of mailed notice of the settlement to all affected settlement class members; and (3) a formal fairness hearing or final settlement approval hearing, at which time class members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented." *Pliego*, 313 F.R.D. at 127 (citing *Manual for Complex Litigation (Fourth)* §§ 21.632-34 (2004)).

A district court should preliminarily approve a settlement if the parties show that the court "would 'likely be able to': (1) approve the proposed settlement under Rule 23(e)(2), and (2) certify the class for the purpose of entry of a judgment on the proposal." *Murray*, 2020 WL 1852382, at *5 (citing Fed. R. Civ. P. 23(e)(1)(B) and 4 W. Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2019)).

As explained above, certification of the Colorado Class is appropriate under Fed. R. Civ. P. 23, and thus the first prong of this test is satisfied.

In *Murray v. Tips Inc.*, this Court held that:

> Under Rule 23(e)(2), the court may approve a proposal which binds class members only if it finds the proposal "fair, reasonable, and adequate" after considering four factors. Those four factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

2020 WL 1852382, at *5-6.

In this Circuit, the determination of whether "the court would likely be able to" approve a

class settlement must consider the four factors from *Rutter & Wilbanks Corp.*: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citing *Rutter,* 314 F.3d at 1188); *see Valverde*, 2019 WL 3075339, at *5.

Because the Parties' Settlement is "fair, reasonable, and adequate" under the factors set forth in *Rutter* and Rule 23(e)(2), the Court should grant preliminary approval so that notice can be sent to the Colorado Class Members. *See Murray*, 2020 WL 1852382, at *5-6.

### 1. *RUTTER* FACTORS.

#### i. THE SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED.

The Settlement was fairly and honestly negotiated. *See Pliego*, 313 F.R.D. at 128; *Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (settlement was fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues").

The Settlement was negotiated at arm's length with the assistance of Magistrate Judge Wang. Counsel for both Parties are well-versed in Colorado Wage and Hour Law, collective actions, and class actions under Rule 23. They vigorously litigated the Plaintiffs' Motion for Conditional Certification and the Defendant's Motion to Dismiss for several months before requesting the Settlement Conference. In advance of the Settlement Conference, the Parties engaged in a good-faith exchange of information through informal discovery. The information

exchanged included the number of class members, the hours worked, the potential damages, and the opposing arguments to be presented in the case. After a lengthy mediation with Judge Wang that lasted until approximately 9:00 p.m., the Parties were able to come to the compromise reflected in the Settlement Agreement. Under these circumstances, the first *Rutter* factor weighs strongly in favor of approving the Settlement. *See* 314 F.3d at 1188.

### ii. SERIOUS QUESTIONS OF LAW AND FACT PLACE THE ULTIMATE OUTCOME IN DOUBT.

The second *Rutter* factor also weighs in favor of approval. *See id.* In analyzing whether "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt," the Court must determine whether the Parties could reasonably conclude that serious questions of law and fact exist; this does not, however, require the Court to evaluate the actual merits of the case. *See Lucas*, 234 F.R.D. at 693-94. As explained below, there are numerous factual and legal disputes that that would have to be resolved through litigation in the absence of the Parties' Settlement.

First, the Parties dispute whether the Plaintiffs and Class Members performed work for which they were not paid federal and Colorado minimum wages, and the nature and extent of that work. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) in holding that plaintiff has burden of establishing nature and extent of work).

Second, there are serious legal and factual questions regarding the trainings for which the Plaintiffs claim they were not properly compensated, specifically, whether the trainings were "mandatory" and thus "time worked" under Colorado Wage and Hour Law. *See* 7 C.C.R. 1103-1, Rule 1.9 ("Time worked means time during which an employee is performing labor or services for

the benefit of an employer, including all time s/he is suffered or permitted to work"); *see also* 29 C.F.R. § 785.27-28 (distinguishing voluntary from mandatory trainings). The Plaintiffs maintain that the trainings were required by the Defendant, for the primary benefit of the Defendant, and directly related to the Plaintiffs' and Class Members' work. *See id*. The Defendant argues that the trainings were for the primary benefit of its employees, and therefore not time worked. *See Nesbitt v. FCNH, Inc.*, 217 F. Supp. 3d 1288, 1298 (D. Colo. 2016), aff'd, 908 F.3d 643 (10th Cir. 2018) (holding that student employees were primary beneficiaries of trainings); *Ortega v. Denver Inst. L.L.C.*, No. 14-CV-01351-MEH, 2015 WL 4576976, at *13 (D. Colo. July 30, 2015) (same). Resolution of these issues would likely require extensive discovery and a dispositive motion filed by one or both sides.

Third, the Parties dispute whether a two, three, or a six-year statute of limitations applies to Colorado minimum wage claims – an important issue that has yet to be resolved by the Colorado appellate courts. *See* C.R.S. § 8-4-122 (CWA's two- or three-year statute of limitations); *see also* C.R.S. § 13-80-103.5(1) (general six-year statute of limitations); *Sobolewski*, 342 F.Supp.3d at 1188-89 (holding that general six-year statute applied to claims brought under Minimum Wage Orders); *see also Pilmenstein*, 492 P.3d at 1067-69 (recognizing that CMWA does not contain express statute of limitations). In the 2018 case of *Sobolewski v. Boselli & Sons*, this Court held that because there was no express statute of limitations for Colorado minimum wage claims, Colorado's general six-year statute of limitations applied to such claims. *Sobolewski*, 342 F.Supp.3d at 1188-89; *accord Cordova-Gonzalez v. TW Lath-n-Stucco, Inc.*, 2021 WL 5086065, at *2. In a 2021 decision, the Colorado Court of Appeals acknowledged that neither the CMWA nor its implementing regulations contained an express statute of limitations for private civil

actions. *Pilmenstein*, 492 P.3d at 1067-69 (*cert. denied*, No. 21SC425, 2021 WL 4943164 (Colo. Oct. 18, 2021)). The Court of Appeals stopped short, however, of ruling that the six-year statute of limitations applied in *Sobolewski*, or any other statute of limitations, applies to minimum wage claims. *See id.*

Fourth, the Plaintiffs have yet to establish that the Defendant's alleged violations of Colorado Wage and Hour Law were "willful." *See* C.R.S. § 8-4-122 (extending limitations period from two to three years for willful violations); *see also* C.R.S. § 8-4-109(3)(c) (imposing additional penalties for "willful" violations of the Wage Act); *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (wage violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute"); *see also Pilmenstein,* 492 P.3d at 1066 ("Whether an employer acted willfully by failing to pay wages is a mixed question of fact and law").

Fifth, while the Parties have stipulated to class certification for the purposes of the Settlement, in the absence of that stipulation the Plaintiffs could not obtain any relief for the Class Members unless they prevailed on a contested motion. *See* Fed. R. Civ. P. 23(c). They might also face a motion to decertify the Rule 23 class and/or any collective that was certified in the case. *See Thiessen*, 267 F.3d at 1105. If the Plaintiffs were successful in their litigation of these issues, they would then need to address the damages issues in this case, *i.e.*, the number of hours worked by Class Members for which they were not properly compensated, at or prior to trial. *See Tyson Foods*, 577 U.S. 442, 456. While Class Counsel are confident that the Plaintiffs could obtain class certification, overcome a motion to decertify, and establish the Class Members' damages, they acknowledge that such outcomes are far from certain.

### iii. THE VALUE OF AN IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF FUTURE RELIEF.

"[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted); *see also In re Amino Acid Lysine*, 1996 U.S. Dist. LEXIS 5308, at *11 (N.D. Ill. Apr. 19, 1996) ("Preliminary approval requires a determination whether the proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify notifying the class members of the proposed settlement").

Under the Settlement, each Colorado Class Member stands to receive wages for 1.5 days of work for the time they are alleged to have spent in trainings, for which they did not allegedly receive compensation. This remedy is focused on training time, and no Class Member other than the Plaintiffs will release any rights they might have against the Defendant that are unrelated to wages and compensation for trainings.[8] In the Amended Complaint, the Plaintiffs alleged that all of the Class Members were required to attend at least three days of trainings without compensation. The Defendant has consistently and adamantly denied this allegation, and insisted that most of the Class Members were only required to attend one day of training that was primarily for their benefit. Assuming that the Plaintiffs and other Class Members are correct, and that each Class Member was not paid for three days, each Class Member's recovery constitutes 50 cents on each dollar alleged to be owed. If the Defendant is correct, each Class Member will receive 50% more than

---

[8] Class Counsel, based on their independent investigation and review, believe that the Defendant adequately paid its employees for the time they spent in trainings that occurred after their initial training period.

any wages they could seek under Colorado Wage and Hour Law. Based on the Class Counsel's careful investigation and analysis, they believe this compromise to be well within the "range of fairness," and otherwise reasonable and adequate. *See Amino Acid Lysine*, 1996 U.S. Dist. LEXIS 5308, at *11.

### iv. THE PARTIES JUDGE THE SETTLEMENT TO BE FAIR AND REASONABLE

As reflected in their Settlement Agreement, the Parties agree that the Settlement is fair and reasonable. *See also Rutter*, 314 F.3d at 1188. Based on Class Counsel's prior experience in dozens of wage-and-hour class actions and their analysis of the facts and evidence in the case, the technical legal issues, the strengths and weaknesses of the Colorado Class Members' claims, the size of the Defendant's business and the pressures of the pandemic on that business, Class Counsel believe that the amount to be recovered is fair, reasonable, and adequate to compensate the Class Members for their potential claims related to training time. Class Counsel's assessment in this regard is "entitled to considerable weight." *See Lucas*, 234 F.R.D. at 695. The Defendant, while continuing to deny that it has violated Colorado Wage and Hour Law in any way, has determined that resolution of this case on the terms set out in the Settlement Agreement is fair and reasonable.

### 2. RULE 23(E)(2)) FACTORS

#### i. THE PLAINTIFFS AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED AND WILL ADEQUATELY REPRESENT THE CLASS.

The Plaintiffs and Class Counsel have diligently represented the interests of the Colorado Class Members throughout this litigation. Counsel thoroughly researched and investigated the factual and legal bases of the Class Members' claims, and engaged in lengthy discussions with the Defendant's counsel regarding these issues as they litigated their Motion for Conditional Certification and the Defendant's Motion to Dismiss. They worked zealously for the Class

Members at the Settlement Conference with Judge Wang, and are committed to continue doing so through the distribution of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A).

### ii. THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH.

As discussed above in Part C(1)(i), the Settlement was negotiated at arm's length. *See* R. Civ. P. 23(e)(2)(B).

### iii. THE RELIEF PROVIDED TO THE CLASS IS ADEQUATE.

#### 1. Costs, Risks, and Delay of Trial and Appeal

There are a significant number of factual and legal disputes that would have to be litigated if this case proceeded to trial, and both sides face substantial risk and costs in that litigation. *See supra* Part C(2)(ii). The Court would have to decide the Defendant's Motion to Dismiss, which presents issues that remain unresolved under Colorado law. Due to the importance of those issues, it is likely that the Court's decision would lead to an appeal, either on an interlocutory basis, or after a judgment was issued, which could mean several years of delay.

The Court would also have to decide the Plaintiffs' Motion for Conditional Certification, which the Defendant has claimed fails to meet the standard under *Thiessen*, but which the Plaintiff's believe would result in conditional certification of all patrol and security officers who worked for the Defendant during a three-year period. *See Thiessen,* 267 F.3d at 1102-05. Assuming that the Plaintiffs obtained conditional certification, however, they would likely have to overcome a motion to decertify, along with a motion for summary judgment at the conclusion of discovery. Both Parties would also have to engage in extensive discovery and briefing on a disputed motion for class certification under Fed. R. Civ. P. 23.

If/when the Plaintiffs overcame the dispositive motions filed by the Defendant, they would

then need to prevail on both individual and class liability and damages at trial, with the damages issues likely requiring expert evidence and testimony. Both sides would expend hundreds of thousands of dollars of attorney's fees, expert fees, and costs in this action. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

### 2. Proposed Method of Distribution

The Parties propose that notice and distribution of the settlement funds should be handled by Rust Consulting, Inc., an experienced class action administrator who will issue checks in equal amounts to each of the 960 Class Members. No claim forms will be required for Class Members to receive their share of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 3. Terms of Proposed Attorney's Fees

The Settlement anticipates that the Plaintiffs will file a motion seeking approval of $68,000.00 in attorney's fees. This amount is less than 30% of the amount recovered for the Class and Collective, and Class Counsel will be able to establish that their fees are reasonable. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Lucken Fam. Ltd. P'ship, LLLP*, 2010 WL 5387559, at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"). Under the Settlement Agreement, attorney's fees and costs are to be paid at the time that settlement payments are sent to the Class and Collective Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 4. Service Awards to Plaintiffs

The Settlement includes service awards of $5,000.00 to each of the three Plaintiffs. *See*

*Pliego*, 313 F.R.D. at 131 ("[N]amed plaintiffs... are eligible for reasonable incentive payments as part of a class action settlement"). This amount is consistent with prior awards in this District, and otherwise reasonable. *See id.* (holding that $7,500.00 service award was "appropriate and is commensurate with awards in similar cases); *Prim v. Ensign United States Drilling, Inc.*, No. 15-CV-02156-PAB-KMT, 2019 WL 4751788, at *5 (D. Colo. Sept. 30, 2019); *Peace Officers Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-CV-0304-WJM-NRN, 2021 WL 1387110, at *7 (D. Colo. Apr. 13, 2021) (approving $10,000.00 to each of the lead plaintiffs).

### 5. *The Parties' Settlement Agreement*

In accordance with Rule 23(e)(3), the Parties have submitted a true and accurate copy of their Settlement Agreement for the Court's consideration. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### iv. THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER.

Neither the Plaintiffs, nor any other Class Member will be treated in a preferential manner under the Settlement. Each Class Member will be paid 1.5 days of wages for the trainings the Plaintiffs allege they were required to attend without compensation. *See* Fed. R. Civ. P. 23(e)(2)(D).

The Parties' proposed Settlement is "fair, reasonable, and adequate" under the factors from *Rutter* and Rule 23(e). *See Murray*, 2020 WL 1852382, at *5-6; *Rutter*, 314 F.3d at 118; Fed. R. Civ. P. 23(3)(e)(2). As such, the Plaintiffs respectfully ask the Court to grant preliminary approval of the Settlement.

### 3. THE FLSA COLLECTIVE ACTION SETTLEMENT

To the extent that final approval of the Settlement might require a showing that the relief proposed for the FLSA Collective is "fair and reasonable" under the standards enunciated by the

Eleventh Circuit Court of Appeals in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982), Class Counsel maintains that they will be able to make that showing, since (1) bona fide disputes exist between the Parties, and (2) the Settlement provides adequate compensation to the FLSA Collective and does not frustrate the FLSA policy rationales. *See Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171-73 (D. Colo. 2018) (holding that there is a "strong presumption" in favor of a finding that an FLSA settlement is fair); *see also supra* Part C(1)(ii). While the majority of courts in this District to rule on the issue have held (and the Parties' counsel agree) that court approval of an FLSA settlement is not necessary unless there appears to be a "defect in either the settlement agreement or process that would require the Court to inquire as to whether there is a bona fide dispute," Class Counsel intend to brief this issue in their motion seeking final approval out of an abundance of caution. *See Carroll v. Schlumberger Tech. Corp.*, No. 20-CV-00619-PAB-STV, 2021 WL 4245370, at *1 (D. Colo. Sept. 16, 2021). [9]

## D. REQUEST TO APPOINT CLASS COUNSEL

"A court that certifies a class must also appoint class counsel." *Valverde*, 2019 WL 3075339, at *5 (citing Fed. R. Civ. P. 23(g)(1)). "To do so, the court 'must consider;' '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in

---

[9] *Accord Edwards v. Hudspeth & Assocs., Inc.*, No. 20-CV-02867-STV, 2021 WL 2255358, at *2 (D. Colo. May 26, 2021); *Inniss v. Rocky Mountain Inventory, Inc.*, No. 18-CV-1475-WJM-KMT, 2020 WL 6318370, at *2 (D. Colo. Oct. 28, 2020); *Lee v. Best Budz LLC*, No. 19-CV-02430-KMT, 2019 WL 5964966, at *3 (D. Colo. Nov. 12, 2019); *Fails v. Pathway Leasing LLC*, No. 18-CV-00308-CMA-MJW, 2018 WL 6046428, at *3 (D. Colo. Nov. 19, 2018); *but see Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *2 (D. Colo. Feb. 11, 2019) (holding that court approval was required).

the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" *Id.* (citing Fed. R. Civ. P. 23(g)(1)(A)). "Further, the court 'may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class' and 'may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs.'" *Id.* (citing Fed. R. Civ. P. 23(g)(1)(B)-(C)).

Class Counsel are experienced litigators who between them have decades of experience in employment law. *See supra* Note 7. The attorney who performed most of the work in this case, Adam Murdoch-Kitt Harrison, has specialized in wage and hour class actions since 2016, and successfully represented thousands of employees in class and collective actions since that time. Mr. Harrison recently prevailed on behalf of a class of Colorado employees in the case of *Pilmenstein v. Devereux Cleo Wallace*, 2021 COA 59, which set an important precedent for various issues of Colorado wage and hour law. Class Counsel will devote to this action whatever resources are necessary to represent the Colorado Class and the FLSA Collective through the Final Fairness Hearing and distribution of the Settlement. Under these circumstances, appointment of HKM Employment Attorneys as Class Counsel is appropriate.

### E.  REQUEST TO APPOINT CLASS REPRESENTATIVES

"Rule 23 classes require one or more class representatives." *Murray*, 2020 WL 1852382, at *5 (citing Fed. R. Civ. P. 23(e)(2)(A)). The Settlement Agreement provides for the appointment of the Plaintiffs as Class Representatives. The Plaintiffs are typical of the Colorado Class and have adequately represented the Class Members during litigation and at the Settlement Conference. Accordingly, the Plaintiffs respectfully ask that the Court appoint them as Class Representatives.

## F. REQUEST TO APPROVE ADMINISTRATOR

The Parties propose Rust Consulting, Inc. as the Administrator who will administer notice to the class and the distribution of the Settlement funds. Rust is a highly-experienced class administration company who has agreed to perform these services for a maximum fee of $17,500.00. Exhibit 4: Rust E-mail.

## G. REQUEST TO APPROVE NOTICE FORMS AND PROCEDURES

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see* Fed. R. Civ. P. 23 (Notice of settlement must be sent "in a reasonable manner to all class members who would be bound by the proposal"); *see Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The Parties have drafted the proposed Notices , which "clearly and concisely state in plain, easily understood language:" (i) the nature of this action; (ii) the definitions of the Colorado Class and the Collective (iii) the claims at issue; (iv) that a Colorado Class Member may enter an appearance through an attorney if they so desire; (v) that the Court will exclude from the Colorado Class any individual who files a timely Opt-Out form; (vi) that a Colorado Class Member who wishes to exclude themselves must file an Opt-Out within 60 days of the mailing of the Notices; and (vii) "the binding effect of a class judgment on members under Rule 23(c)(3)." *See* Fed. R. Civ. P. 23(c)(2)(B). The Notices to the FLSA Collective include additional information regarding the process Collective Members must follow to opt in. Exhibit 3: Collective Notices.

As set out in the Settlement Agreement, the Parties propose that the Notices be sent to the Class and Collective Members during a 60-day notice period. Any Colorado Class Member who wishes to exclude themselves from the Settlement may do so by filing an Opt-out Form (attached to Exhibit 2) within 60 days of the Administrator's mailing of the notices. Any FLSA Collective Member who wishes to participate in the Settlement may do so by filing an Opt-in Form (attached to Exhibit 3) within 60 days of the Administrator's mailing of the notices. For any Notice that is returned undeliverable, the Administrator will perform skip tracing and engage in other efforts consistent with the standards of the class administration industry to obtain additional contact information and re-send the Notice. Within Thirty (30) days of the end of the 60-day notice period, Class Counsel will file unopposed motions seeking final approval of the Settlement and approval of their reasonable attorney's fees and costs. As part of that Motion, Class Counsel and the Administrator will provide the Court with a report on the actions they have taken during the notice periods, the number of Opt-ins, and any Opt-outs and/or objections to the Settlement.

The Notices and the notice procedures proposed by the Parties are reasonably calculated to provide the Class and Collective Members with "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). Therefore, the Notices should be approved and notice should be sent in accordance with the procedures in the Settlement Agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs respectfully request that the Court preliminarily approve their Settlement and enter the proposed order submitted with this Motion.

Respectfully submitted on this 1st day of February, 2022.

*/s/ Adam M. Harrison*
_____

Claire E. Hunter
Shelby Woods
Adam M. Harrison
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
720.255.0370
chunter@hkm.com
swoods@hkm.com
aharrison@hkm.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 1st day of February, 2022, I filed the foregoing Motion and its corresponding Exhibits and proposed order through the CM/ECF system, generating true and accurate copies of these documents to all counsel of record.

*/s/ Adam M. Harrison*

_____
Adam M. Harrison