# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01462-RM-NYW

SHAWN MESS, TIMOTHY MOSS, and COREY REEVES,
individually and on behalf of all others similarly situated,

      Plaintiffs,

     v.

AQUILA SERVICES CORPORATION,
a Wyoming corporation doing business as "Denver Metro Protective Services,"

      Defendant.

---

## JOINT MOTION SEEKING FINAL APPROVAL OF
## CLASS AND COLLECTIVE SETTLEMENT

---

The Plaintiffs, Shawn Mess ("Mess"), Timothy Moss ("Moss"), and Corey Reeves ("Reeves") (collectively, "Plaintiffs"), and the Defendant, Aquila Services Corporation, doing business as "Denver Metro Protective Services," ("Defendant") (Plaintiffs and Defendants collectively referred to as "Parties"), through their respective counsel of record and in accordance with the Court's February 3, 2022 Order Granting Unopposed Motion for Order Preliminarily Approving Proposed Class and Collective Action Settlement (ECF No. 55, "Preliminary Approval Order"), state as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel certify that they conferred with the Defendant's counsel and provided a draft of this Motion to the Defendant's counsel for their review and edits prior to its filing. This Motion is being filed on behalf of all Parties.

## INTRODUCTION

In this class and collective action, the Plaintiffs allege that the Defendant violated Colorado wage and hour law and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") by: (1) failing to pay security officers and patrol officers for the time they spent attending trainings; and (2) failing to pay patrol officers overtime compensation for hours worked over 40 per week. The Parties participated in a Settlement Conference with the Honorable Magistrate Judge Nina Y. Wang and as a result of that Conference, agreed to settle the claims that were brought or could have been brought in this action on November 2, 2021. The Parties memorialized their agreement in the Settlement Agreement ("Agreement"), which is attached hereto as Exhibit 1.

On February 3, 2022, the Court issued its Preliminary Approval Order:

1. Certifying for settlement purposes:

   a. A class under Fed. R. Civ. P. 23 consisting of security officers and patrol officers who worked for the Defendant between January 1, 2019 and November 12, 2021 ("Colorado Class"); and

   b. A collective under 29 U.S.C. § 216(b) consisting of patrol officers who worked for the Defendant between March 1, 2020 and November 12, 2021 ("FLSA Collective")

2. Preliminarily approving the Settlement reflected in the Parties' Settlement Agreement (Exhibit 1, previously filed as ECF No. 54-1);

3. Approving the Plaintiffs as Class Representatives and their counsel as Class Counsel;

4. Approving Rust Consulting, Inc. as the Settlement Administrator;

5. Approving the notice, opt-in, and opt-out forms (ECF Nos. 54-2, 54-3) proposed by the Parties;

6. Ordering the Settlement Administrator to proceed with Notice to the Colorado Class and the FLSA collective in accordance with the procedures in the Settlement Agreement during a 60-day notice period; and

7. Setting the Final Fairness Hearing for Wednesday, August 3, 2022.

The Parties and the Settlement Administrator have complied with the Preliminary Approval Order. Exhibit 2: Rust Decl. Rust sent the notice forms approved by the Court to 637 potential Colorado Class Members and 29 potential FLSA Collective Members and conducted traces and re-sent notices to Members whose notices were returned undeliverable. Out of the 637 potential Colorado Class Members, only seven opted out. Of the 29 potential FLSA Collective Members, 10 opted in to the Settlement. Exhibit 3: Consent Forms. No putative Member of the Class or Collective has filed an objection to the Settlement.

The Parties jointly request that the Court grant final certification of the Colorado Class and the FLSA Collective and final approval of the class and collective settlement reflected in their Settlement Agreement. As discussed below, final certification is appropriate under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), and final approval is appropriate because the Settlement is "fair, reasonable and adequate." *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (requirements for approval of Rule 23 settlement); *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679

F. 2d 1350, 1352-55 (11th Cir. 1982) (requirements for approval of FLSA collective settlement).

## **BACKGROUND**

### I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Defendant is a Wyoming corporation that provides security guard and patrol services to customers drawn from the public. Plaintiff Mess was employed by the Defendant as a patrol officer from June 2018 until June 2020. Plaintiff Moss was employed by the Defendant as a security officer in April 2021. Plaintiff Reeves was employed by the Defendant as a security officer in March and April 2021. The Defendant employed a total of 637 security and patrol officers during the period from January 1, 2019 to November 12, 2021 ("Colorado Class Members").[1]

The Plaintiffs allege that they and each of the other Colorado Class Members were required to participate in 3-4 days of mandatory training at the start of their employment, for which they received no compensation. The Defendant denies these allegations, and further denies that the time at issue was "time worked" under the FLSA and/or Colorado Wage and Hour Law.

The Defendant employed a total of 29 patrol officers during the period from March 1, 2020 to November 12, 2021 ("FLSA Collective Members"). The Plaintiffs allege that on or around March 1, 2020, the Defendant reclassified Mess and the other FLSA

---

[1] The Parties initially believed that there were more than 900 potential Colorado Class Members, but that information was corrected by the Defendant after a careful review of its employment records.

Collective Members as "exempt" and stopped paying them overtime for hours that they worked over 40 per week. The Defendant denies these allegations as well.[2]

On June 1, 2021, Plaintiffs Moss and Reeves initiated this action by filing their Individual, Collective, and Class Action Complaint and Jury Demand. ECF No. 1. On June 14, 2021, the Plaintiffs filed their First Amended Individual, Collective, and Class Action Complaint and Jury Demand ("Amended Complaint"). ECF No. 11. As reflected in the Amended Complaint, the Plaintiffs claim that the Defendant violated Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq.*, and those Acts' implementing regulations, 7 C.C.R. 1103-1 (collectively, "Colorado Wage and Hour Law"), and the FLSA by: (1) failing to pay minimum wages for the time employees spent participating in 3-4 days of mandatory trainings; and (2) failing to pay patrol specialists overtime compensation at a rate of one and one-half times their regular rates of pay for hours they worked over 40 per week during the period from March 1, 2020 to November 12, 2021. ECF No. 11 ¶¶ 6-23

On November 2, 2021, the Parties participated in a Settlement Conference with Magistrate Judge Wang. Prior to that Conference, the Parties engaged in informal discovery, which included the Defendant's production of a significant amount of information regarding its security and patrol officers, and the hours worked and wages

---

[2] Individually, Plaintiff Mess alleges that the Defendant retaliated against him in violation of the FLSA and committed the torts of wrongful termination in violation of public policy and negligence *per se* by terminating him for complaining about its wage policies. *See* ECF No. 11 at 24-26. The Parties have agreed to settle all of Mess's individual claims in conjunction with the Rule 23 and FLSA settlements in the Settlement Agreement.

paid to those officers. Due to Judge Wang's efforts, expertise, and assistance, the Parties

agreed to settle on November 12, 2021. ECF No. 49. The Plaintiffs then filed an

Unopposed Motion for Order Preliminarily Approving Proposed Class and Collective

Action Settlement (ECF No. 54), which the Court granted on February 3, 2022. ECF No.

55.

## II.    TERMS OF PARTIES' PROPOSED SETTLEMENT

As set forth in the Parties' Settlement Agreement, and subject to final approval

from this Court:

1.  The Parties stipulated to preliminary and final certification of the Colorado Class
    under Fed. R. Civ. P. 23:

2.  The Parties also stipulated to preliminary and final certification of the FLSA
    Collective;

3.  The Parties stipulated to the appointment of the Plaintiffs as Class Representatives,
    Mess as the Collective Representative, and the undersigned counsel for the
    Plaintiffs, Claire Hunter, Shelby Woods and Adam Harrison of HKM Employment
    Attorneys LLP ("Class Counsel") as Class Counsel for the Colorado Class and the
    FLSA Collective;

4.  The Defendant will pay a Total Settlement Amount of Two Hundred Forty-Nine
    Thousand, Four Hundred Ninety-Nine Dollars ($249,499.00), to the Plaintiffs, the
    Colorado Class, and the FLSA Collective to resolve all claims that were brought or
    that could have been brought in this action. From this amount:

A.  One Hundred Sixty-Five Thousand, Six Hundred Eighty-One Dollars ($165,681.00) will be paid to the Colorado Class. The Parties anticipate that after attorney's fees, this amount will result in each Colorado Class Member receiving $263.00, which is the equivalent of 2.2 days of wages at a rate of $14.77 per hour;

B.  Thirteen Thousand Dollars ($13,000.00) will be paid to the FLSA Collective, less any attorney's fees approved by the Court. If the Court grants Class Counsel's Motion Seeking Approval of Attorneys' Fees, each Collective Member will be paid $787.90;

C.  Service awards of Five Thousand Dollars $5,000.00 will be paid to each of the three Plaintiffs ($15,000.00 total);

D.  Separate from the relief proposed for the Class and Collective Members, the Parties agreed to settle Mess's individual claims of FLSA retaliation, wrongful termination against public policy, and negligence per se for Thirty-Seven Thousand, Five Hundred Dollars ($37,500.00), less attorney's fees;

E.  Class Counsel is contemporaneously filing a Motion Seeking Approval of Attorneys' fees, in which they ask the Court to approve Sixty-Eight Thousand Dollars ($68,000.00) in attorney's fees, and costs of Eight Hundred Eighteen Dollars ($818.00);

F.  Seventeen Thousand Five Hundred Dollars ($17,500.00) will be paid from the Total Settlement Amount to Rust Consulting, Inc. for the costs of administering notice and distributing the Settlement;

5.  For the seven (7) Colorado Class Members who opted out during the 60-day notice period proposed in the Agreement, those funds will be re-allocated to the other Class Members. For any checks that are not cashed by Class Members following final approval, those funds will revert to the Defendant 180 days after the initial date on which such checks are sent out; and

6.  The Plaintiffs will release all of the claims they brought or could have brought against the Defendant. The other Colorado Class Members who do not opt out of the Settlement will release all claims related to payment/nonpayment of wages, compensation, overtime compensation, rest periods, meal periods, etc. for any time they spent in trainings while employed by the Defendant. The Collective Members who opted in to the Settlement will release all wage/compensation claims that were brought or that could have been brought in this action; and

7.  The Defendant has entered into the Settlement Agreement without any admission of liability. The Defendant expressly denies all of the Plaintiffs' claims, and further denies that it engaged in any violation of the FLSA or Colorado Wage and Hour Law, or any other form of wrongdoing toward the Plaintiffs, the Colorado Class Members, or the FLSA Collective Members. The Defendant has entered into the Settlement for the sole purpose of avoiding the expense, risk, and disruption to its business of continued litigation.

Class Counsel, who are experienced in wage and hour class actions, have carefully investigated the Plaintiffs' and the Class Members' claims, and the legal and factual bases for these claims. They have considered the positions and arguments of the Defendant in this litigation, the strengths and weaknesses of the Parties' positions, and the information exchanged by the parties in informal discovery. Class Counsel have also taken into consideration the precarious financial situation of the Defendant who, like many other small businesses in Colorado's security industry (and many other service industries) was negatively impacted by the global pandemic during the past two years. Based on their knowledge, experience, investigation, and analysis of this case, Class Counsel has concluded that the Settlement, which provides for recovery of approximately 50% of the wages alleged to be due to the Colorado Class and 40 hours of overtime premiums for the FLSA Collective Members, is fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Class and Collective Members.

The Defendant, while continuing to deny the Plaintiffs' claims and while maintaining that it has complied with the FLSA and Colorado Wage and Hour Law at all times, agrees that the settlement is fair and reasonable.

III.   NOTICE SENT TO CLASS AND COLLECTIVE MEMBERS

The Parties and the Settlement Administrator have complied with the procedures approved by the Court in its Preliminary Approval Order. ECF No. 55; Exhibit 2. The Defendant provided the Settlement Administrator with lists of the potential Colorado Class Members and FLSA Collective Members. *Id.* ¶ 4. Within 21 days of receiving those lists, the Settlement Administrator sent the notice, opt-in, and opt out forms approved by

the Court (ECF Nos. 54-2, 54-3) to the 637 potential Colorado Class Members and the 29 potential FLSA Collective Members. *Id.* ¶¶ 5-9. The Settlement Administrator engaged in skip tracing and other efforts in accordance with the industry standards of the class administration industry to obtain additional contact information and re-send the notices to any Class or Collective Members whose notices were returned undeliverable. *Id.*

The Notices approved by this Court informed Class Members that they had 60 days to opt out of the Rule 23 settlement if they wished to do so. *See* Ex. 2 at 6-19. The FLSA Collective Members were provided with that information, and also informed that they had 60 days to opt in to the FLSA Collective, if they wished to do so. *See id.* The Settlement Administrator provided the Parties with weekly updates regarding the notices sent and re-sent, and the opt-in and opt-out forms received, and provided their final report to the Parties on June 22, 2022.

Seven (7) Colorado Class Members opted out of the Settlement. Ten (10) FLSA Collective Members opted in to the FLSA settlement. No member of the Colorado Class or the FLSA Collective has objected to the Settlement.

## DISCUSSION

### I.  THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE COLORADO CLASS AND FINAL APPROVAL OF THE CLASS SETTLEMENT.

To be valid, a class action settlement must be approved by the Court. Fed. R. Civ. P. 23(e). "The review and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class settlement, and the proposed class notice; (2) dissemination of mailed notice of the settlement to all affected settlement class

members; and (3) a formal fairness hearing or final settlement approval hearing, at which time class members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016) (citing *Manual for Complex Litigation (Fourth)* §§ 21.632-34 (2004)).

### A.  FINAL CERTIFICATION OF THE RULE 23 CLASS

As threshold matters, the Court must decide whether to grant class certification of the Colorado Class under Fed. R. Civ. P. 23. *See Murray v. Tips, Inc.*, No. 18-CV-00937-RM-KLM, 2020 WL 1852382, at *3 (D. Colo. Apr. 13, 2020). Final certification is appropriate because the Colorado Class satisfies the prerequisites of Fed. R. Civ. P. 23(a) and the requirements of Fed. R. Civ. P. 23(b)(3).

#### 1.  *Numerosity*

The Colorado Class is sufficiently numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). There are 637 security and patrol officers who worked for the Defendant between January 1, 2019 and November 12, 2021. Because joinder of that many individuals would be impracticable, the first prerequisite is met. *See* Fed. R. Civ. P. 23(a)(1); *see also Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002) (In determining whether a proposed Class meets the numerosity requirement, a court "may make 'common sense assumptions to support a finding that joinder would be impracticable.'").

11

### 2. *Commonality*

There are numerous questions of law and fact that are common to the Colorado Class. *See* Fed. R. Civ. P. 23(a)(2), 23(b)(3). Such issues include but are not limited to: (1) whether the Class Members were paid the applicable minimum wage for all of the hours that they worked for the Defendant (*see* 7 C.C.R. 1103-1:9 (2020); (2) whether the Class Members were paid minimum wages for the hours they spent in trainings at the start of their employment, and whether such trainings were "voluntary" or "mandatory" (*see* 29 C.F.R. §§ 785-27-28); (3) whether the time spent in such trainings was "time worked" (*see* 7 C.C.R. 1103-1, Rule 1.9); (4) the statute of limitations that applies to the Class Members' claims (*see* C.R.S. § 8-4-122) (two- or three-year limitation under CWA) and C.R.S. § 13-80-103.5(1) (general six-year limitation held to apply to minimum wage claims in *Cordova-Gonzalez v. TW Lath-N-Stucco, Inc.*, No. 21-CV-01617-CMA-KMT, 2021 WL 5086065, at *2 (D. Colo. Nov. 2, 2021); and (5) whether the Defendant's violations of Colorado Wage and Hour Law, if any, were "willful." *See* C.R.S. § 8-4-109(3)(c) (enhancing penalties if violation was willful); C.R.S. § 8-4-122 (extending statute of limitations from two to three years for willful violations).

### 3. *Typicality*

The Colorado Class also satisfies the "typicality" prerequisite because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). The Plaintiffs allege to have been subject to the same policies and practices that are alleged for the rest of the Colorado Class Members, *i.e.*, the requirement to attend trainings at the start of their employment without compensation.

### 4. *Adequacy of Representation*

Additionally, "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). Neither the Plaintiffs nor Class Counsel have any conflicts of interest with the other Class Members. *Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-NRN, 2019 WL 3075339, at *4 (D. Colo. July 15, 2019). Class counsel are experienced wage and hour class litigators, and they have prosecuted this action vigorously on behalf of all of the Colorado Class Members. *See id.*

### 5. *Predominance and Superiority of Class Action*

The key issues in this case are common to the class, including: (1) whether the Class Members were paid the applicable minimum wage for all of the hours that they worked; (2) whether the trainings at issue in this case were voluntary or mandatory; (3) whether the time spent in such trainings was "time worked" under Colorado law; (4) the statute of limitations that applies to the Class Members' claims; and (5) whether the Defendant's alleged violations of Colorado Wage and Hour Law were "willful." Because these issues are amenable to class-wide resolution through generalized proof, the predominance standard is met. *See Pliego*, 313 F.R.D. at 127. Class Counsel are not aware of any other action filed on behalf of a Member or Members of the Colorado Class, and no other Class Member has expressed or demonstrated an interest in individually controlling this case. Fed. R. Civ. P. 23(b)(3)(A)-(B). The District of Colorado is the ideal forum for the concentration of this litigation because the Defendant resides in this District and the Plaintiffs and the Class Members worked in Colorado. *See* Fed. R. Civ.

P. 23(b)(3)(C); *see also Murray,* 2020 WL 1852382 at *3-4 (holding that requirement in Rule 23(b)(3)(D) does not apply in the settlement context).

Finally, the class action vehicle is the superior method for adjudicating this controversy because it involves small claims of hourly workers. Courts in the District of Colorado have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are unlikely to be otherwise pursued. *See, e.g., Maez v. Springs Automotive Group*, LLC, 268 F.R.D. 391, 397 (D. Colo 2010); *Cook v. Rockwell International Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998).

Because the prerequisites of Rule23(a) and the requirements of Rule 23(b)(3) are satisfied, the Court should grant final certification of the Colorado Class.

### B.  FINAL APPROVAL OF CLASS SETTLEMENT

In determining whether to grant final approval of a class settlement, courts in the Tenth Circuit consider: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter,* 314 F.3d at 1188; *see Valverde*, 2019 WL 3075339, at *5. In addition, Fed. R. Civ. P. 23 requires that a court consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

relief to the class, including the method of processing class-member claims; (iii) the terms
of any proposed award of attorney's fees, including timing of payment; and (iv) any
agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class
members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

### 1.  THE SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED.

The Settlement was fairly and honestly negotiated. *See Pliego*, 313 F.R.D. at 128;
*Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL
2650037, at *3 (D. Colo. June 30, 2010) (settlement was fairly and honestly negotiated
where the "parties entered into the agreement only after engaging in a meaningful
exchange of information, and with full knowledge of the critical factual and legal
issues"). The Settlement was negotiated at arm's length with the assistance of Magistrate
Judge Wang. Counsel for both Parties are well-versed in Colorado Wage and Hour Law,
collective actions, and class actions under Rule 23. They vigorously litigated the
Plaintiffs' Motion for Conditional Certification (ECF No. 27) and the Defendant's Motion
to Dismiss (ECF No. 31) for several months before requesting the Settlement Conference.
In advance of the Settlement Conference, the Parties engaged in a good-faith exchange
of information through informal discovery. After a lengthy mediation with Judge Wang
that lasted until approximately 9:00 p.m., the Parties were able to come to the compromise
reflected in the Settlement Agreement. Under these circumstances, the first *Rutter* factor
weighs strongly in favor of approving the Settlement. *See* 314 F.3d at 1188.

## 2. SERIOUS QUESTIONS OF LAW AND FACT PLACE THE ULTIMATE OUTCOME IN DOUBT.

The second *Rutter* factor also weighs in favor of approval because there are numerous factual and legal disputes that that would have to be resolved through litigation in the absence of the Parties' Settlement.

First, the Parties dispute whether the Plaintiffs and Class Members performed work for which they were not paid federal and Colorado minimum wages, and the nature and extent of that work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (holding that plaintiff has burden of establishing nature and extent of work).

Second, there are serious legal and factual questions regarding the trainings for which the Plaintiffs claim they were not properly compensated, specifically, whether the trainings were "mandatory" and thus "time worked" under Colorado Wage and Hour Law. *See* 7 C.C.R. 1103-1, Rule 1.9 ("Time worked means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work"); *see also* 29 C.F.R. § 785.27-28 (distinguishing voluntary from mandatory trainings). The Plaintiffs maintain that the trainings were required by the Defendant, for the primary benefit of the Defendant, and directly related to the Plaintiffs' and Class Members' work. *See id*. The Defendant argues that the trainings were for the primary benefit of its employees, and therefore not time worked. *See Nesbitt v. FCNH, Inc.*, 217 F. Supp. 3d 1288, 1298 (D. Colo. 2016), aff'd, 908 F.3d 643 (10th Cir. 2018) (holding that student employees were primary beneficiaries of trainings); *Ortega v. Denver Inst. L.L.C.*, No. 14-CV-01351-MEH, 2015 WL 4576976, at *13 (D. Colo. July

30, 2015) (same). Resolution of these issues would likely require extensive discovery and a dispositive motion filed by one or both sides.

Third, the Parties dispute whether a two, three, or a six-year statute of limitations applies to Colorado minimum wage claims – an important issue that has yet to be resolved by the Colorado appellate courts. *See* C.R.S. § 8-4-122 (CWA's two- or three-year statute of limitations); *see also* C.R.S. § 13-80-103.5(1) (general six-year statute of limitations); *see also Pilmenstein v. Devereux Cleo Wallace*, 492 P.3d 1059, 1067-69 (Colo. App. 2021) (recognizing that CMWA does not contain express statute of limitations).

Fourth, the Plaintiffs have yet to establish that the Defendant's alleged violations of Colorado Wage and Hour Law were "willful." *See* C.R.S. § 8-4-122 (extending limitations period from two to three years for willful violations); *see also* C.R.S. § 8-4-109(3)(c) (imposing additional penalties for "willful" violations of the Wage Act); *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (wage violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute"); *see also Pilmenstein,* 492 P.3d at 1066 ("Whether an employer acted willfully by failing to pay wages is a mixed question of fact and law").

Fifth, while the Parties have stipulated to class certification for the purposes of the Settlement, in the absence of that stipulation the Plaintiffs could not obtain any relief for the Class Members unless they prevailed on a contested motion. *See* Fed. R. Civ. P. 23(c). They might also face a motion to decertify the Rule 23 class and/or any collective that was certified in the case. *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105

(10th Cir. 2001). If the Plaintiffs were successful in their litigation of these issues, they would then need to address the damages issues in this case, *i.e.*, the number of hours worked by Class Members for which they were not properly compensated, at or prior to trial. While Class Counsel are confident that the Plaintiffs could obtain class certification, overcome a motion to decertify, and establish the Class Members' damages, they acknowledge that such outcomes are far from certain.

### 3. THE VALUE OF AN IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF FUTURE RELIEF.

"[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted); *see also In re Amino Acid Lysine*, 1996 U.S. Dist. LEXIS 5308, at *11 (N.D. Ill. Apr. 19, 1996) ("Preliminary approval requires a determination whether the proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify notifying the class members of the proposed settlement").

Under the Settlement, each Colorado Class Member stands to receive $263.00, which is the equivalent of 2.2 days of wages at $14.77 per hour. This remedy is focused on training time, and no Class Member other than the Plaintiffs will release any rights they might have against the Defendant that are unrelated to wages and compensation for trainings. In the Amended Complaint, the Plaintiffs alleged that all of the Class Members were required to attend at least three days of trainings without compensation. The Defendant has consistently and adamantly denied this allegation, and insisted that most of the Class Members were only required to attend one day of training that was primarily

for their benefit. Assuming that the Plaintiffs and other Class Members are correct, and that each Class Member was not paid for three days, each Class Member's recovery constitutes 73 cents on each dollar alleged to be owed. If the Defendant is correct, each Class Member will receive 100% more than the wages they could seek under Colorado Wage and Hour Law. Based on the Class Counsel's careful investigation and analysis, they believe this compromise to be entirely fair, reasonable, and adequate.

### 4. THE PARTIES JUDGE THE SETTLEMENT TO BE FAIR AND REASONABLE.

As reflected in their Settlement Agreement, the Parties agree that the Settlement is fair and reasonable. *See also Rutter*, 314 F.3d at 1188. Based on Class Counsel's prior experience in dozens of wage-and-hour class actions and their analysis of the facts and evidence in the case, the technical legal issues, the strengths and weaknesses of the Colorado Class Members' claims, the size of the Defendant's business and the pressures of the pandemic on that business, Class Counsel believe that the amount to be recovered is fair, reasonable, and adequate to compensate the Class Members for their potential claims related to training time.

### 5. THE PLAINTIFFS AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS.

The Plaintiffs and Class Counsel have diligently represented the interests of the Colorado Class Members throughout this litigation. *See* Fed. R. Civ. P. 23(e)(2)(A)). Counsel thoroughly researched and investigated the factual and legal bases of the Class Members' claims, and engaged in lengthy discussions with the Defendant's counsel regarding these issues as they litigated their Motion for Conditional Certification and the

Defendant's Motion to Dismiss. They worked zealously for the Class Members at the Settlement Conference with Judge Wang and during the notice period, and are committed to continue doing so through the distribution of the Settlement. *See id.*

### 6. THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH.

As discussed above in Part B(1), the Settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B).

### 7. THE RELIEF PROVIDED IS ADEQUATE, TAKING INTO ACCOUNT THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL.

There are a significant number of factual and legal disputes that would have to be litigated if this case proceeded to trial, and both sides face substantial risk and costs in that litigation. *See supra* Part B(2). The Court would have to decide the Defendant's Motion to Dismiss, which presents issues that remain unresolved under Colorado law. The Court would also have to decide the Plaintiffs' Motion for Conditional Certification. Assuming that the Plaintiffs obtained conditional certification, however, they would likely have to overcome a motion to decertify, along with a motion for summary judgment at the conclusion of discovery. The Parties would also have to engage in extensive discovery and briefing on a disputed motion for class certification under Fed. R. Civ. P. 23. If/when the Plaintiffs overcame the dispositive motions filed by the Defendant, they would then need to prevail on both individual and class liability and damages at trial, with the damages issues likely requiring expert evidence and testimony. Both sides would expend hundreds of thousands of dollars of attorney's fees, expert fees, and costs in this action. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). In light of the substantial costs, risk, and delay that would be associated with this litigation and any subsequent appeal, the payment to

the Colorado Class Members of more than 70% of what the Plaintiffs allege they are owed is fair and reasonable.

### 8.  PROPOSED METHOD OF DISTRIBUTING RELIEF TO THE CLASS

Rust Consulting, Inc., an experienced class action administrator, sent notice of the Settlement to the Class, and did so in accordance with the Court's Preliminary Approval Order. The Parties propose that Rust also administer checks in equal amounts to each of the 630 Colorado Class Members. No claim forms will be required for Class Members to receive their share of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 9.  PROPOSED AWARD OF ATTORNEYS' FEES, AND THE TIMING OF PAYMENT

Class Counsel is seeking approval of $68,000.00 in attorney's fees. This amount is less than 30% of the amount recovered for the Class and Collective. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Lucken Fam. Ltd. P'ship, LLLP*, Case No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"). Under the Settlement Agreement, attorney's fees and costs are to be paid at the time that settlement payments are sent to the Class and Collective Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 10. PROPOSED SERVICE AWARDS AND TIMING OF PAYMENT

The Settlement includes service awards of $5,000.00 to each of the three Plaintiffs. *See Pliego*, 313 F.R.D. at 131 ("[N]amed plaintiffs... are eligible for reasonable incentive

payments as part of a class action settlement"). This amount is consistent with prior awards in this District, and otherwise reasonable. *See id.* (holding that $7,500.00 service award was "appropriate and is commensurate with awards in similar cases); *Prim v. Ensign United States Drilling, Inc.*, No. 15-CV-02156-PAB-KMT, 2019 WL 4751788, at *5 (D. Colo. Sept. 30, 2019) (approving $7,500.00 service award); *Peace Officers Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-CV-0304-WJM-NRN, 2021 WL 1387110, at *7 (D. Colo. Apr. 13, 2021) (approving $10,000.00).

## 11. THE SETTLEMENT AGREEMENT

In accordance with Rule 23(e)(3), the Parties have submitted a true and accurate copy of their Settlement Agreement for the Court's consideration. Exhibit 1; *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

## 12. THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY.

Neither the Plaintiffs, nor any other Class Member will be treated in a preferential manner under the Settlement. Each Class Member will be paid 2.2 days of wages for the trainings the Plaintiffs allege they were required to attend without compensation. *See* Fed. R. Civ. P. 23(e)(2)(D).

The Parties' proposed Settlement is "fair, reasonable, and adequate" under the factors from *Rutter* and Rule 23(e). *See Murray*, 2020 WL 1852382, at *5-6; *Rutter*, 314 F.3d at 118; Fed. R. Civ. P. 23 (e)(2). As such, the Court should grant final approval of the Settlement.

II.    **THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA COLLECTIVE AND FINAL APPROVAL OF THE FLSA SETTLEMENT.**

A.    <u>**FINAL CERTIFICATION OF FLSA COLLECTIVE**</u>

In deciding whether to certify a collective under 29 U.S.C. § 216(b), the Court must determine whether the collective members are "similarly situated" under the FLSA. *See Murray,* 2020 WL 5893411, at *1 (citing *Thiessen,* 267 F.3d at 1103). In making this determination, the Court should consider: (1) whether the plaintiffs have put forth substantial allegations that the putative collective members "were together the victims of a single decision, policy, or plan;" (2) disparate factual and employment settings of the individual employees; (3) the various defenses available to defendant which appear to be individual to each employee; and (4) "fairness and procedural considerations." *Id.* at 1102–03.

The Plaintiffs allege that the ten (10) FLSA Collective Members were subject to policies and practices whereby they were misclassified as "exempt" and not paid overtime compensation for overtime worked between March 1, 2020 and November 12, 2021. All of the Collective Members were employed by the Defendant in Colorado as Patrol Officers. Class Counsel is not aware of any distinctions or defenses between the FLSA Collective Members that would make final certification appropriate. Moreover, "fairness and procedural considerations" weigh in favor of certifying the FLSA Collective, because the claims of the individual Collective Members are relatively small, and without being able to proceed as a collective it is unlikely that the individual employees would have been able to pursue their claims. *See, e.g., Maez*, 268 F.R.D. at 397; *Cook*, 181 F.R.D. at 482. Under these circumstances, the Plaintiffs have sufficiently demonstrated that the

FLSA Collective Members are "similarly situated" under 29 U.S.C. § 216(b), and as such, final certification is appropriate.

**B.  FINAL APPROVAL OF FLSA SETTLEMENT**

A court may grant final approval of an FLSA settlement where: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171 (D. Colo. 2018) (citing *Lynn's Food Stores*, 679 F.2d at 1354)).

This case involves numerous *bona fide* disputes, including: (A) whether the FLSA Collective Members worked hours over 40 per week for which they were not paid overtime compensation (*see Anderson*, 328 U.S. at 687-88 (1946) (plaintiff has burden of establishing nature and extent of work); (B) whether the FLSA Collective Members were properly classified as "exempt" from the overtime compensation requirements of the FLSA (*see* 29 U.S.C. § 207); (C) whether the hours for which the FLSA Collective Members seek compensation were "time worked" under the FLSA (*see* 29 C.F.R. § 785.27-28); and (D) whether the Defendant's violations of the FLSA, if any, were "willful" as a matter of law (*see Mumby*, 636 F.3d at 1270).

The Settlement is fair, reasonable, and consistent with the policy rationales of the FLSA. *See Davis*, 292 F. Supp. at 1173 ("To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales"). Under the Settlement Agreement, each of the FLSA Collective Members stands to receive $787.90 for the overtime compensation they are alleged to have worked between March

1, 2020 and November 12, 2021. Patrol officers employed by the Defendants were paid between $15.00 and $17.00 per hour. As such, the payment to each FLSA Collective Member reflects overtime premiums for approximately 98.5 hours of overtime. *See Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (applying overtime damages at a rate of .5 times the regular rate in misclassification case). Class Counsel believes that this amount reflects a full, or nearly full recovery of the overtime due to the FLSA Collective.

The attorney's fees sought by Class Counsel are also reasonable. In accordance with the Settlement Agreement, Class Counsel is seeking a fee of $4,333.00, which is one third of the gross amount to be paid to the FLSA collective. *See Lucken*, 2010 WL 5387559, at *5–6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); see *Davis*, 292 F. Supp. 3d at 1174 (holding that 37% award was "well within the normal range for a contingent fee award").

Because the FLSA settlement is "fair and reasonable" under the standards typically applied by this Court, the Court should grant final approval of the Settlement. *See Davis*, 292 F. Supp. 3d at 1171 (citing *Lynn's Food Stores*, 679 F.2d at 1354)).

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant final approval of their Settlement and enter the proposed order submitted with this Motion.

Respectfully submitted on this 13th day of July, 2022.

*/s/ Adam M. Harrison*
_____

Adam M. Harrison
Claire E. Hunter
Shelby Woods
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
720.255.0370
aharrison@hkm.com
chunter@hkm.com
swoods@hkm.com

*Counsel for the Plaintiffs*

*/s/ Micah D. Dawson*
_____

Micah D. Dawson
Jeffrey H. McClelland
FISHER & PHILLIPS LLP
1125 17th Street, Suite 2400
Denver, Colorado 80202
303.218.3665 (phone)
mdawson@fisherphillips.com
jmcclelland@fisherphillips.com

Jason M. Spitalnick
Michael J. Gates
FOSTER GRAHAM MILSTEIN &
CALISHER, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
303.333.9810
jspitalnick@fostergraham.com
mgates@fostergraham.com

*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2022, I filed the foregoing Motion and Exhibits through the CM/ECF system, generating a true and accurate copy of the documents to all counsel of record.

*/s/ Jen Kern*
_____

Jen Kern, Paralegal