
EXHIBIT 1

# SETTLEMENT AND RELEASE AGREEMENT

Plaintiffs Shawn Mess ("Mess"), Timothy Moss ("Moss"), and Corey Reeves ("Reeves," and collectively with Mess and Moss, "Plaintiffs"), on behalf of themselves and the Settlement Class defined below, on the one hand, and Aquila Services Corporation d/b/a Denver Metro Protective Services, on the other hand, agree to a settlement, subject to approval as discussed below, through this Settlement and Release Agreement ("Settlement" or "Agreement"):

## I.     DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

1. "Action" means the lawsuit entitled Shawn Mess, Timothy Moss, and Corey Reeves v. Aquila Services Corporation, Case No. 1:21-cv-01462-RM-NYW, pending in the United States District Court for District of Colorado.

2. "Administrator" means the third-party claims administrator mutually agreed-upon by the Parties, whose costs will be deducted from the Gross Settlement Amount, which the Parties have agreed may be only up to $17,500.00.

3. "Authorized Claimant" means a Participating Class Member who has returned a valid and timely Claim Form.

4. "Opt-in Form" means the approved claim form and consent to join, that will be agreed upon by the Parties, that Settlement Collective Members must complete, sign and timely return to receive a Settlement payment.

5. "Opt-out Form" means the approved exclusion form that will be agreed upon by the Parties, that Settlement Collective Members must complete, sign and timely return to be excluded from the Training Settlement Class.

6. "Claim Form" means the approved claim form and consent to join, that will be agreed upon by the Parties, that Settlement Class Members must complete, sign and timely return to receive a Settlement payment.

7. "Class Counsel" means HKM Employment Attorneys LLP.

8. "Class Representatives" or "Plaintiffs" or "Named Plaintiffs" means Shawn Mess, Timothy Moss, and Corey Reeves.

9. "Court" means the United States District Court for the District of Colorado.

10. "Defendant" means Aquila Services Corporation d/b/a Denver Metro Protective Services.

11. "Defendant's Counsel" means the law firm of Fisher & Phillips LLP.

12. "Effective Date" means the day the Settlement is Final as defined below.

1

.

13. "Final" means that the Court has granted final approval of the Settlement without modification and either: (a) the applicable date for seeking appellate review of the Court's approval of the Settlement has passed without a timely appeal; (b) an appellate court has rendered a final decision or judgment affirming the Court's final approval of the Settlement without modification, and the time for any further appeal has expired; or (c) any timely appeal has been dismissed.

14. "Final Approval Hearing" means any hearing that the Court conducts to determine whether to finally approve and implement the Settlement. In no event shall any Final Approval Hearing be scheduled earlier than 75 days after notice is mailed to Settlement Class Members.

15. "FLSA" means the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.

16. "Gross Settlement Amount" means $249,499.00. Defendant's gross aggregate payments under this Agreement shall not under any circumstances exceed the "Gross Settlement Amount."

17. "Gross Training Class Settlement Amount" means $165,681.00. Defendant's gross aggregate payments to the Training Class under this Agreement shall not under any circumstances exceed the "Gross Training Class Settlement Amount."

18. "Gross Overtime Collective Settlement Amount" means $13,000.00. Defendant's gross aggregate payments to the Overtime Collective under this Agreement shall not under any circumstances exceed the "Gross Overtime Collective Settlement Amount."

19. "Shawn Mess Wrongful Termination Claim Settlement Amount" means $37,500.00.

20. "Net Settlement Amount" means the Gross Settlement Amount minus the Shawn Mess Wrongful Termination Claim Settlement Amount, any approved amounts for Class Counsel's fees and costs, the Administrator's costs, and the service payments to the Class Representatives.

21. "Notice" means the approved notice to be mailed to Settlement Class Members that will be agreed upon by the Parties, which, following the Preliminary Approval of the Settlement, will be mailed to each Settlement Class Member explaining the Settlement terms and the claims process, as set forth herein.

22. "Overtime Collective Settlement Class" means all individuals who are reflected on the Final Overtime Collective Class Data List, which, for the purposes of this Settlement only and for no other purpose whatsoever, shall consist of all of 29 Patrol Officers employed by Defendant since March 1, 2020.

23. "Participating Overtime Collective Member(s)" means all individuals in the Overtime Collective Settlement Class who have timely submitted a court-approved consent form to participate in the Settlement.

FP 42919195.6

Doc ID: d8df26ffcf697792215126bafbae8186724f28a0

24. "Participating Training Class Member(s)" means all individuals in the Training Class who have not timely submitted a request to be excluded from the Settlement.

25. "Parties" means Plaintiffs together with Defendant, and "Party" means any of the Parties.

26. "Preliminary Approval" means that the Court has preliminarily approved the settlement and authorized the issuance of Notice to Settlement Class Members, as set forth herein.

27. "Release Period" means the period dating back to June 1, 2018.

28. "Settlement Payment" means the distribution of the Net Settlement Amount to Authorized Claimants. "Potential Settlement Payment" means the pro-rata share of the Net Settlement Amount allocable to each Settlement Class Member; however, notwithstanding the foregoing, only Authorized Claimants shall be entitled to receive Settlement Payments, which shall each be referred to herein as an "Individual Settlement Payment."

29. "Training Class Settlement Class" or "Training Class Settlement Class Member(s)" means all individuals who are reflected on the Final Training Class Data List, which, for the purposes of this Settlement only and for no other purpose whatsoever, shall consist of all current and former Security and Patrol Officers employed by Defendant since January 1, 2019.

## II.   RECITALS

30. On June 1, 2021, Plaintiffs filed a complaint with the Court alleging violations of the FLSA, Colorado wage and hour law, and retaliation on behalf of Plaintiffs, which initiated the Action.

31. On June 14, 2021, Plaintiffs filed a first amended complaint with the Court alleging violations of the FLSA, Colorado wage and hour law, and retaliation on behalf of Plaintiffs. The first amended complaint is the operative complaint in the Action.

32. The Parties seek to resolve all claims raised in the Action. For purposes of this Agreement, the Parties have agreed to the following settlement classes:

   a. All current and former Security and Patrol Officers employed by Defendant since January 1, 2019, who do not exclude themselves; and

   b. Any of 29 Patrol Officers employed by Defendant from March 1, 2020 to November 12, 2021 who file a court-approved consent form to participate.

33. Defendant denies Plaintiffs' allegations in the Action and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Action. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendant has agreed to settle the Action on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Action.

34. The purpose of this Agreement is to conclusively and finally resolve all of Plaintiffs' and Participating Overtime Collective Settlement Class Members' and Participating

Training Class Settlement Class Members' claims against Defendant that were raised or arise out of the facts alleged as part of the Action and occurred during the Release Period.

35. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void and the Parties revert to the status quo ante as more fully described in Section 69(b) below.

36. The statute of limitations under the FLSA shall continue to run for Overtime Collective Settlement Class Members who did not opt-in to the Action prior to the date this Agreement is mutually executed.

37. The Parties mediated before Magistrate Judge Nina Y. Wang. After additional settlement discussions, the Parties were able to reach an agreement to settle this putative collective and/or class action on the terms set forth within this Agreement.

### III. TERMS OF SETTLEMENT

38. **Condition Precedent**. The Settlement and the payments described herein are conditioned upon passing of the Effective Date and the Settlement becoming Final.

39. **Gross Settlement Amount**: Defendant's total aggregate payments under this Agreement shall under no circumstances exceed $249,499.00.

40. **Taxes**. Plaintiffs and the Authorized Claimants shall be responsible to pay any and all taxes owed by them based on the payments made to them under the Settlement and the Notices shall instruct the Class and Collective Members that they should seek the tax advice of a tax professional regarding the tax implications of the Settlement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendant that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the Plaintiffs' and Class Members' obligations of the Authorized Claimants hereunder shall not extend to any potential employer's share of employment taxes owed by Defendant, if any.

41. **Class Counsel's Attorneys' Fees, Costs and Expenses**: Plaintiffs and/or Class Counsel will request a payment from the Gross Settlement Amount for attorneys' fees, costs, and expenses for all the work already performed and all the work remaining to be performed in this Action, including for fees, costs, and expenses incurred by Class Counsel in prosecuting the Action and implementing the terms of the Settlement, in a gross amount not to exceed approximately 27.25% of the Gross Settlement Amount, or $68,000.00. The Defendant agrees that it shall not oppose Class Counsel's request for fees up to $68,000.00 unless its counsel believes in good faith that the amount requested is not reasonable under the standards governing such fee awards in the Court. The award of Class Counsel's attorneys' fees, costs, and expenses approved by the Court shall be wired to the Administrator within fifteen (15) days after the Effective Date of the settlement. The Parties agree that any reduction in the amount of attorneys' fees, costs, and/or

4

expenses approved for Class Counsel shall not be a basis for rendering the entire Settlement voidable or unenforceable. Any reduction of the amount of attorneys' fees, costs, and/or expenses which is ordered by the Court and affirmed during any appeal shall be part of the Net Settlement Amount.

42. **Service Payments to Class Representatives**: Subject to the Court's approval, Plaintiffs shall each be paid a service payment in an amount not to exceed $5,000.00, to be paid from the Gross Settlement Amount, for their service as Class Representatives, and in consideration for the General Release of Claims, in addition to any payments they may otherwise receive as Authorized Claimants. The service payments to the Class Representatives approved by the Court shall be wired to the Administrator within twenty-one (21) days after the Effective Date of the settlement. The service payments shall be treated as non-employee income and the Class Representatives shall be issued an IRS Form 1099 in the amount of their service payments. The Parties agree that any reduction in the amount of the Class Representatives requested service payment shall not be a basis for rendering the entire Settlement voidable or unenforceable. If the Court approves a service payment of less than the amount sought, the remainder will be retained in the Net Settlement Amount.

43. **Costs And Settlement Administration Costs**: The amount of $17,500.00 shall be deducted from the Gross Settlement Amount to pay for all costs, including costs incurred by the Administrator in administering the Settlement (including costs for retaining the Administrator, mailing of notices (including class notices), forwarding of return notices, processing of claim forms, and mailing of the individual checks to Authorized Claimants). If the Administrator's costs are less than $17,500.00, the remainder will revert to Defendant. The Parties agree that they will work together in good faith to agree on a Settlement Administrator who will charge fees that are equal to or less than $17,500.00 for the services necessary to administer the Settlement.

44. **Distribution to Training Class Settlement Class Members:**

(a) The Parties anticipate that each Training Class Settlement Payment will be $119.28, reflecting 1.3 days of wages at the Colorado minimum wage for 2020. This Payment may be slightly higher, however, since the payments allocated to any Class Member who opts out of the Settlement will be reallocated to the other Settlement Class Members prior to the Final Hearing.

(b) Submission of Opt-Out Forms: The Training Settlement Class Members shall have Sixty (60) days to opt out of or object to the Settlement, if they wish to do so, by filling out, signing, and delivering the Opt-Out Form to the Administrator by the date specified in the Notice agreed to by the Parties.

(c) Common Fund Settlement: This is a common fund settlement. For any amounts allocated to a potential Training Class Member who excludes themselves in a timely manner during the 60-day notice period, those funds will be re-allocated to the other Class Members. For any checks that are not cashed by Class Members following final approval, those funds will revert to the Defendant 180 days after initial date on which such checks are sent out by the Administrator..

5

(d) Tax Allocation of Settlement Payments and Service Payment: One-hundred percent (100%) of the Individual Settlement Payments made will be treated as non-taxable payments in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties. No payroll or tax withholdings will be taken from these payments. The Authorized Claimants and the Class Representatives will be responsible for correctly characterizing his respective settlement payments for tax purposes and paying any taxes owing on said amounts. Any tax obligation(s) arising from the Individual Settlement Payments and the Class Representatives' Service Payment will be the sole responsibility of each Authorized Claimant. Plaintiffs and the Authorized Claimants shall be responsible to pay any and all taxes owed by them based on the payments made to them under the Settlement and the Notices shall instruct the Class and Collective Members that they should seek the tax advice of a tax professional regarding the tax implications of the Settlement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendant that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Authorized Claimants hereunder shall not extend to any potential employer's share of employment taxes owed by Defendant, if any. None of the Released Parties nor any of their representatives have made any warranty concerning the tax treatment of any sums to be paid under this Agreement, and Settlement Class Members have not relied on any such representation in determining the tax treatment of such sums.

(e) None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendant or any of their current or former parent companies, subsidiaries or affiliates.

(f) None of the payments and/or distributions detailed in this Section shall be made until the dates specifically called for herein.

(g) Within ten (10) calendar days after receipt of the funds for Authorized Claimants, the Administrator shall mail the Individual Settlement Payments to the Authorized Claimants.

45. **Distribution to Overtime Collective Settlement Class Members:**

(a) Within ten (10) calendar days after receipt of the Overtime Collective Final Class Data List (as set forth below), the Parties shall calculate each Overtime Collective Settlement Class Member's potential Settlement Payment ("Potential Overtime Collective Settlement Payment"), as follows.

(b) The Potential Overtime Collective Settlement Payment will be calculated in the following manner after the 60-day notice period: For each Overtime Collective Settlement Class Member, the Net Overtime Collective Settlement Payment divided by 29.

(c) Opt-in Forms: Only the Participating Overtime Collective Settlement Class Members who submit timely and valid Opt-in Forms (the "Authorized Claimants") shall be paid. To be timely, the Opt-in Forms must be submitted by the deadline indicated on the Opt-in Forms

Doc ID: d8df26ffcf697792215126bafbae8186724f28a0

by mail or fax (if mailed, bearing a postmark on or before the deadline), which date shall be not later than 60 days after the Notice is mailed.  To be valid, Opt-in Forms must be signed, dated, and returned to the Administrator by the deadline.  As the Named Plaintiffs will sign this Agreement, they do not need to sign, date, and return the Claim Form to demonstrate their consent to join the class action.

(d)     Common Fund Settlement: This is a common fund settlement. If any Overtime Collective Settlement Class Members do not file valid claims (and thus do not become Authorized Claimants) (hereinafter referred to as "Non-Claimants"), the Administrator shall re-distribute any Net Overtime Collective Settlement Payment funds that were allocated to the Overtime Collective Settlement Class Members but are unclaimed in accordance with this Section to all Participating Overtime Collective Settlement Class Members who are Authorized Claimants in accordance with this Section on a pro-rata basis.

(e)     Tax Allocation of Settlement Payments and Service Payment: One-hundred percent (100%) of the Individual Settlement Payments made will be treated as non-taxable payments in reimbursement for incurred expenses and in settlement of claims for alleged interest and penalties. No payroll or tax withholdings will be taken from these payments.  The Authorized Claimants and the Class Representatives will be responsible for correctly characterizing his or her respective settlement payments for tax purposes and paying any taxes owing on said amounts (including without limitation, any interest or penalties required by law).  Any tax obligation(s) arising from the Individual Settlement Payments and the Class Representatives' Service Payment will be the sole responsibility of each Authorized Claimant.  Plaintiffs and the Authorized Claimants shall be responsible to pay any and all taxes owed by them based on the payments made to them under the Settlement and the Notices shall instruct the Class and Collective Members that they should seek the tax advice of a tax professional regarding the tax implications of the Settlement; provided, however, that, without making any representation or warranty concerning the tax treatment of any sums to be paid under this Agreement, and provided that nothing herein is intended as, and shall not be construed as, any representation or admission by Defendant that any employer's share of income taxes shall be owed with respect to any such sums, the Parties acknowledge and agree that the indemnification obligations of the Authorized Claimants hereunder shall not extend to any potential employer's share of employment taxes owed by Defendant, if any. None of the Released Parties nor any of their representatives have made any warranty concerning the tax treatment of any sums to be paid under this Agreement, and Settlement Class Members have not relied on any such representation in determining the tax treatment of such sums.

(f)     None of the payments described in this Agreement shall be subject to matching contributions or included as benefits-eligible earnings under any benefit plan or policy of the Defendant or any of their current or former parent companies, subsidiaries or affiliates.

(g)     None of the payments and/or distributions detailed in this Section shall be made until the dates specifically called for herein.

(h)     Within ten (10) calendar days after receipt of the funds for Authorized Claimants, the Administrator shall mail the Individual Settlement Payments to the Authorized Claimants.

46. **Conflict of Terms**:  In the event of a conflict between the terms set forth in any communication (including, without limitation, the Notice and Claim Form) and this Agreement, the terms of this Agreement shall control.

## IV.  SETTLEMENT PROCEDURES

47. **Motion for Preliminary Approval**:  Within thirty (30) calendar days after the execution of this Agreement by all Parties, Plaintiffs shall file a motion for preliminary approval of the Settlement (which shall not contain the monetary terms contained herein), applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission:

(a) Scheduling any necessary fairness hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class;

(b) Approving as to form and content the proposed Notice to the Settlement Class;

(c) Approving as to form and content the proposed Overtime Collective opt-in form;

(d) Approving as to form and content the proposed Claim Form;

(e) Approving the proposed method of requesting exclusion from the Settlement;

(f) Directing the mailing of the Notice and Claim Form by first-class mail to the Settlement Class Members;

(g) Preliminarily approving the Settlement; and

(h) Preliminarily certifying the Overtime Collective Settlement Class and Training Class Settlement Class for purposes of calculating Potential Settlement Payments, for purposes of settlement only.

48. **Confidentiality**

(a) The Parties agree to treat the Settlement and/or this Agreement as confidential and agree that they shall not communicate to third parties in any way concerning this Agreement or any of its terms or conditions.  The Parties and their Counsel may not make any public comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media or website, or issue any press release or media release regarding the terms of this Agreement.  If any member of the media contacts the Parties or their counsel regarding this matter, the Party or counsel shall only respond that the matter **"has been resolved."**  Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles. Nothing in this paragraph prohibits Class Counsel from communicating with their clients including Settlement Class Members after the Court grants Preliminary Approval of the Settlement.  Nothing in this Agreement shall prevent Defendant or Defendant's Counsel from making any necessary, appropriate, or required disclosures to regulators, auditors, bankers, and the like, or from complying with their obligations under the law.  Class Counsel will promptly notify Defendant's Counsel of any third-party legal demand that they disclose information pertinent to the Settlement or this Agreement.  Plaintiffs agree not to oppose

any motion by Defendant to file the Agreement under seal or for in camera review. However, if the Court requires the public filing of this Agreement, such requirement will not affect the validity of the settlement.

49. **Notice to the Classes:**

(a) Within twenty-one (21) days of the date the Court preliminarily approves the Settlement and certifies the Overtime Collective Settlement Class and Training Class Settlement Class, Defendant will provide to the Administrator the names, last known addresses, last known telephone numbers, and the last four digits of the social security numbers of the Overtime Collective Settlement Class Members ("Overtime Collective Final Class Data List") and of the Training Class Settlement Class Members ("Training Class Final Class Data List"). Defendant will provide Class Counsel copies of the Overtime Collective Final Class Data List and Training Class Final Class Data List that do not include the contact information or social security numbers of the Overtime Collective Settlement Class Members and Training Class Settlement Class Members. This data shall be based on Defendant's payroll and/or other business records.

(b) Within twenty-one (21) calendar days after receipt of the above Final Class Data List from Defendant, to the extent practicable, the Administrator shall consult the National Change of Address Registry, and mail to all Settlement Class Members, by first-class U.S. mail, the Notice and Claim Form, and a pre-addressed, postage-paid return envelope (collectively, "the Notice Packet").

50. **Opt-in Process:**

(a) Overtime Settlement Collective Members shall have sixty (60) calendar days after the initial mailing of the Notice Packets to return their Opt-in Forms to the Administrator ("Opt-in Deadline"). Opt-in Forms may be submitted to the Administrator via U.S. mail postmarked on or before the Opt-in Deadline, sent by fax on or before the Opt-in Deadline, or sent by e-mail on or before the Opt-in Period Deadline. In the case of mailed Opt-in Forms, the postmark date will be deemed the date of submission.

(b) The Administrator shall provide the Parties with a weekly update of the number of Opt-out Forms and the Opt-in Forms received (including the numbers of valid and deficient Forms), and any opt-outs and/or objections, and provide copies of any Claims Forms;

(c) Within ten (10) days of the Opt-in Period Deadline, the Administrator shall provide to the Parties any Claim Forms and opt-outs and/or objections not provided in accordance with subparagraph (c) above, along with a final list of all Authorized Claimants and each Authorized Claimants' Individual Settlement Payment (hereinafter "Final Payment List"). The Parties shall agree on the Final Payment List.

(d) Within twenty-one (21) days of the Effective Date or agreement on the Final Payment List, whichever is later, Defendant shall wire to the Administrator an amount sufficient to pay all Authorized Claimants on the Final Payment List in the amount provided therein, Class Counsel's approved attorneys' fees and costs, and the Class Representatives' approved Service Awards.

(e) Within ten (10) days of receipt of the settlement funds, the Administrator shall issue checks to Class Counsel, Class Representative, and the Authorized Claimants, as set forth herein.

(f) Each Authorized Claimant's settlement check shall include the following release language on the back of the check:

By signing and cashing or otherwise negotiating this check I release all claims or causes of action I have against the Released Parties in the lawsuit styled Shawn Mess, Timothy Moss, and Corey Reeves v. Aquila Services Corporation, Case No. 1:21-cv-01462-RM-NYW, pending in the United States District Court for District of Colorado. for the claims that were asserted in any civil complaint filed in the Action; that relate to or arise out of the reimbursement of expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; that relate to or arise out of the payment of the applicable minimum wage, under-payment of the applicable minimum wage, or failure to pay the applicable minimum wage; that relate to or arise out of entitlement to meal or rest periods; or that arise under the Fair Labor Standards Act (FLSA), the Colorado Wage Claim Act ("CWCA"), the Colorado Minimum Wage Act ("CMWA"), the Colorado Minimum Wage Order, the Colorado Overtime and Minimum Pay Standards Order, or any similar federal, state, municipal or local laws.

51. **Records and Disputes**: If a person believes that he or she was wrongly excluded from being a member of the Settlement Class, the Parties will endeavor to resolve the issue informally.

52. **Objections to the Settlement**: Settlement Class Members who wish to object to the Settlement must not exclude themselves from the Settlement and must serve on the Administrator, not later than sixty (60) calendar days after the date that the Administrator first mails the Notice Packets ("Objection Deadline"), a written statement objecting to the Settlement and setting forth the grounds for the objection, as explained further in the Notice. This statement also must indicate whether the Settlement Class Member intends to appear and object to the Settlement at any Final Approval Hearing. The failure to so indicate will constitute a waiver of the right to appear at the hearing. A Settlement Class Member who does not submit an objection in the manner and by the deadline specified above shall be deemed to have waived all objections and will be foreclosed from making any objection to the Settlement, whether by appeal or otherwise, absent a contrary order of the Court.

53. **Requests for Exclusion:**

(a) Settlement Class Members who wish to exclude themselves from the Settlement (opt out of the Settlement) must submit to the Administrator, not later than sixty (60) calendar days after the date that the Administrator first mails the Notice Packets ("Opt-Out Deadline"), an Opt-out Form requesting that he or she be excluded from the Settlement Class. Opt-out Forms may be submitted to the Administrator via U.S. Mail or fax. A Settlement Class Member who does not submit a valid and timely Opt-out Form in the manner and by the deadline specified above shall be bound by all terms and conditions of the Settlement, releases and by the Judgment. A Settlement Class Member who timely submits a valid Opt-out Form shall not participate in, or be bound by, the Settlement or the Judgment in any respect. To be valid, Opt-out Forms must be

10

submitted to the Administrator by the Opt-Out Deadline.  Persons who submit an Opt-out Form shall not be permitted to file objections to the Settlement or appear at any Final Approval Hearing to voice any objections to the Settlement.

(b) If a Settlement Class Member completes and submits both an Opt-in Form and an Opt-out Form, the Administrator will contact the Settlement Class Member to obtain clarification of the Settlement Class Member's intent. In the event that the Administrator is unable to obtain clarification of the Settlement Class Member's intent by the time of any Final Approval Hearing, it will be presumed that the Opt-in Form is controlling, and such Settlement Class Member shall be treated as an Authorized Claimant, be paid an Individual Settlement Payment pursuant to the Opt-in Form, and be bound by the terms of the Settlement.  The Administrator will inform the Parties' Counsel of the name of any person who submits both a Claim Form and an Exclusion Letter.  As necessary, the Court will be the final arbiter with respect to any disputes as to whether a person has filed a valid Claim Form, a valid Exclusion Letter, a valid objection to the Settlement, and/or a valid dispute as to the person's inclusion or exclusion as a Participating Class Member and/or Authorized Claimant.

(c) Although Settlement Class Members who do not submit either a valid and timely Claim Form or a valid and timely Exclusion Letter will not receive an Individual Settlement Payment, they shall be bound by all of the terms of the Settlement, including without limitation, the release set forth in the Settlement.

54. **Final Approval:**

(a) Within thirty (30) days of the end of the 60-day notice period, Plaintiffs will file with the Court a motion for final approval of the Settlement and a memorandum in support of their motion.  Class Counsel will prepare the motion for final approval and will provide Defendant' Counsel sufficient opportunity to review and agree on the content of the motion before it is filed.

(b) At the time the motion for final approval of the Settlement is filed, Class Counsel shall provide the Court a report specifying the due diligence that it and the Administrator have undertaken with regard to the mailing of the Notice; and reporting (to date) on the number of claims, objections, disputes (and status), and opt-outs submitted.

(c) Not later than five (5) court days before any Final Approval Hearing, the Parties may file, jointly or separately, a reply in support of their joint motion for final approval of the Settlement, in the event any opposition to the joint motion for final approval has been filed. Likewise, Class Counsel may file a reply in support of the motion for approval of Class Counsel's attorney's fees and costs, in the event any opposition to the motion for such attorneys' fees and/or costs has been filed.

(d) At or before the Final Approval Hearing, the Parties will present a Judgment for the Court's entry.  After entry of the Judgment, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of enforcing the Settlement, addressing settlement administration matters, and addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

(e)    Upon the filing of the motion for final approval of the Settlement, the Parties will submit a proposed Order in a mutually agreeable form.

55.    **Returned Checks**: If an Individual Settlement Payment check envelope is returned as undeliverable, the Administrator will use its discretion to take all steps necessary to locate an updated mailing address for that Settlement Class Member, including without limitation, enhanced skip tracing methods, calling and/or emailing the Authorized Claimant using the telephone number and/or email address provided in his or her returned Claim Form.

56.    **Uncashed Checks**: If an Authorized Claimant has not cashed his or her Individual Settlement Payment check within one-hundred twenty (180) calendar days after issuance, such check will become stale and the funds returned by the Administrator will revert to Defendant.

### V.    RELEASE OF CLAIMS

57.    **Overtime Collective Settlement Members' Released Claims**: Upon the Effective Date of the Settlement, the Class Representatives and the Overtime Collective Settlement Members will release and forever discharge Defendant, and its former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising on or before the date the Court grants preliminary approval ("Release Period"), arising out of, based on, or encompassed by: (a) the claims that were asserted in any civil complaint filed in this case on behalf of any Settlement Class Member; (b) claims that relate to unpaid wages; (c) claims that relate to unpaid overtime; (d) claims that relate to unpaid compensation; (e) claims that relate to or arise out of the reimbursement of expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind; (f) claims that relate to or arise out of the payment of the applicable minimum wage, under-payment of the applicable minimum wage, or failure to pay the applicable minimum wage; (g) claims that relate to or arise out of the entitlement to meal or rest periods; or (h) claims that arise under the Fair Labor Standards Act (FLSA), the Colorado Wage Claim Act (CWCA), the Colorado Minimum Wage Act (CMWA), the Colorado Minimum Wage Order, the Colorado Overtime and Minimum Pay Standards Order, or any similar federal, state, municipal or local laws.  Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

58.    **Training Class Settlement Members' Released Claims**: Upon the Effective Date of the Settlement, the Class Representatives and the Training Class Settlement Members will release and forever discharge Defendant, and its former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal

representatives ("Released Parties"), from any and all claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising on or before the date the Court grants preliminary approval ("Release Period") related to time spent or allegedly spent in trainings, instruction, and/or classes of any kind ("Trainings"), arising out of, based on, or encompassed by: (a) the claims that were asserted in any civil complaint filed in this case on behalf of any Settlement Class Member related to Trainings; (b) claims that relate to unpaid wages related to Trainings; (c) claims that relate to unpaid overtime related to Trainings; (d) claims that relate to unpaid compensation related to Trainings; (e) claims that relate to or arise out of the reimbursement of expenses, under-reimbursement of expenses, or failure to reimburse expenses of any kind related to Trainings; (f) claims that relate to or arise out of the payment of the applicable minimum wage, under-payment of the applicable minimum wage, or failure to pay the applicable minimum wage related to Trainings; (g) claims that relate to or arise out of the entitlement to meal or rest periods related to Trainings; or (h) claims that arise under the Fair Labor Standards Act (FLSA), the Colorado Wage Claim Act (CWCA), the Colorado Minimum Wage Act (CMWA), the Colorado Minimum Wage Order, the Colorado Overtime and Minimum Pay Standards Order, or any similar federal, state, municipal or local laws related to Trainings. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

59. **Release of Fees and Costs**: Plaintiffs, on behalf of themselves and the Settlement Class Members, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that they have or may have against Defendant for attorneys' fees, costs, or expenses associated with this Action, including but not limited to those attorneys' fees, costs, or expenses associated with Class Counsel's representation of the Plaintiffs and Settlement Class Members in this Action. Plaintiffs further understand and agree that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Class Counsel's representation of Plaintiffs and the Settlement Class Members in this Action.

## VI.  ADDITIONAL PROVISIONS

60. **No Waiver of Arbitration Agreements**: The Parties agree that, by entering into and seeking Court approval of this Agreement, Defendant in no way waives any rights to enforce arbitration agreements entered into between Defendant and Settlement Class Members, including the waiver of class and collective action litigation, or to enforce similar agreements with other employees.

61. **Signatories:**

(a) The respective signatories to the Settlement represent that he, she or they are fully authorized to enter into this Settlement and bind to its terms and conditions the respective entities for which the person is signing as shown on the signature line.

(b) The Parties agree that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The

13

Notice will advise all Settlement Class Members of the binding nature of the release. Excepting only the Settlement Class Members who submit a valid and timely Exclusion Letter, this Agreement shall have the same force and effect as if it were executed by each Settlement Class Member.

62. **Cooperation to Implement Settlement**: The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

63. **Disputes**: Any dispute between the Parties concerning the interpretation or implementation of this Agreement will be resolved by the Court. Prior to any such resort to the Court, counsel for the Parties will confer in good faith to resolve the dispute. If the Parties are unable to resolve the dispute themselves, the dispute will be submitted to the Court, unless the Parties agree otherwise.

64. **No Prior Assignments**: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

65. **No Admission of Liability and Inadmissibility of Settlement**:

(a) Defendant denies liability to Plaintiffs and the Settlement Class for any claim or cause of action. Defendant has denied and continues to deny each of the claims and contentions alleged by Plaintiffs in the Action. Defendant has repeatedly asserted and continue to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action. Defendant also has denied and continues to deny the allegations that the Settlement Class Members have suffered damage or that the Settlement Class Members were harmed by the conduct alleged in the Action. By entering into this Agreement, Defendant in no way admits to the suitability of this Action for collective and/or class action litigation other than for purposes of settlement.

(b) Settlement of the Action and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant, or of the truth of any of the factual allegations in any and all Complaints filed in the Action; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason, except a proceeding to enforce the terms of this Agreement.

14

66. **Fair, Adequate, and Reasonable Settlement**: The Parties agree that the Settlement is fair, adequate, and reasonable, and will so represent it to the Court; provided, however, that nothing herein is intended to, and shall not be construed to, waive the confidentiality of the Parties' settlement or settlement negotiations and discussions pursuant to the Federal Rules of Evidence.

67. **Waiver of Appeals**: The Parties agree to waive all appeals from the Court's final approval of this Settlement, unless the Court materially modifies the Settlement; provided, however, that Plaintiffs may appeal any reduction in the amount of Class Counsel's fees and expenses and/or the service payment to the Class Representative. Any reduction in the amount of Class Counsel's fees, Class Counsel's expenses, and/or the service payments to the Class Representatives will not, however, constitute a material modification of the Settlement and will not be grounds to void the Settlement.

68. **No Tax Advice:** Neither Class Counsel nor Defendant' Counsel intend anything contained in this Settlement to constitute advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

69. **Class Certification and Settlement Approval:**

(a) In connection with the request for Preliminary Approval of the Settlement, Plaintiffs shall seek an order certifying the Settlement Class for settlement purposes only under Colorado law. Defendant are consenting to the certification of the Settlement Class for settlement purposes only and contend that class certification would not be appropriate if the matter were litigated.

(b) In the event: (i) the Court does not enter the Order specified herein; (ii) the Court does not finally approve the Settlement as provided herein; (iii) the Court does not enter a Final Judgment as provided herein, which becomes final as a result of the occurrence of the Effective Date; or (iv) the Settlement does not become Final for any other reason, this Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning. In such a case, any certified class shall be decertified, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. In such case, the Settlement shall not be used or be admissible in any subsequent proceedings, either in this Action, with the Court or in any other Court or forum. In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

70. **Use of Confidential Documents and Information**: Plaintiffs and Class Counsel agree to keep confidential all documents and information produced in the course of discovery and litigation of this Action, and Plaintiffs agree to return any such documents to Class Counsel. All documents and information produced in discovery in this Action, otherwise obtained in the course of the litigation of this Action, as well as all documents and information (including Settlement

15

Class Member contact information) produced in connection with effectuation of this Settlement, shall only be used for purposes directly related to the effectuation of this Settlement.

71. **Non-Disparagement**: Plaintiffs agree not to make any disparaging comments about Defendant, its affiliates, or their personnel to any third party, including, but not limited to, customers, competitors, or any other person, consultant, or entity with whom Defendant or its affiliates interact or conduct business with. Defendant agrees to not to make any disparaging comments about Plaintiffs to any third party.

72. **Mess's Employment Records**: Promptly after the Parties have fully executed this Agreement, Defendant will revise Mess's employment records to reflect that he voluntarily resigned his employment. In connection with any inquiries by third parties about Mess's employment, Mess agrees to direct any such inquiries to Defendant's General Manager, who will provide only Mess's dates of employment and positions held in response to such inquiries.

73. **Cooperation in Drafting**: The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party, his, her, its, or their counsel participated in its drafting.

74. **Applicable Law**: All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Colorado, without giving effect to any conflict of law principles or choice of law principles.

75. **Captions and Headings**: Captions, headings or paragraph titles in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.

76. **Modification**: This Settlement may not be changed, altered, or modified, except in writing, and signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

77. **Integration Clause**: This Settlement contains the entire agreement between the Parties relating to the resolution of the Action. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement. No rights under this Agreement may be waived except in writing.

78. **Binding on Assigns**: This Settlement may be binding upon and inure to the benefit of the Parties and their respective heirs, trustee, executors, administrators, successors and assigns.

79. **Counterparts**: This Agreement shall be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

FP 42919195.6

Doc ID: d8df26ffcf697792215126bafbae8186724f28a0

80. **Interim Stay of Proceedings in Action**:  The Parties agree to hold in abeyance all proceedings in the Action, except such proceeding necessary or appropriate to implement and complete the Settlement, pending any Final Approval Hearing.

81. **Enforceability**:  When this Agreement is signed by all Parties and their attorneys of record, it shall be fully enforceable by the court pursuant to any applicable provision of law.

**[SIGNATURE PAGE TO FOLLOW]**

Doc ID: d8df26ffcf697792215126bafbae8186724f28a0

_____   02 / 01 / 2022
Shawn Mess                           Date


_____   02 / 01 / 2022
Timothy Moss                         Date


_____   02 / 01 / 2022
Corey Reeves                         Date


_____   02/04/2022
Aquila Services Corporation          Date
By: _____Brandon Snively_____
Title: _____CEO_____

18



# Audit Trail

| | |
|---|---|
| **TITLE** | Moss-Mess-Reeves-Aquila Settlement Agreement |
| **FILE NAME** | AQUILA.MESS.MOSS ...(42919195.6).docx |
| **DOCUMENT ID** | d8df26ffcf697792215126bafbae8186724f28a0 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

## Document History

**SENT**  
**02 / 02 / 2022**  
00:24:26 UTC  
Sent for signature to Timothy Moss (mosstimothy@outlook.com), Shawn Mess (ssmlj@yahoo.com) and Corey Reeves (corey.reeves42@gmail.com) from legalassistant@hkm.com  
IP: 98.38.115.91

**VIEWED**  
**02 / 02 / 2022**  
00:34:30 UTC  
Viewed by Timothy Moss (mosstimothy@outlook.com)  
IP: 174.198.143.149

**SIGNED**  
**02 / 02 / 2022**  
00:39:36 UTC  
Signed by Timothy Moss (mosstimothy@outlook.com)  
IP: 174.198.143.149

**VIEWED**  
**02 / 02 / 2022**  
00:42:11 UTC  
Viewed by Shawn Mess (ssmlj@yahoo.com)  
IP: 73.243.90.64

**SIGNED**  
**02 / 02 / 2022**  
00:43:06 UTC  
Signed by Shawn Mess (ssmlj@yahoo.com)  
IP: 73.243.90.64



Audit Trail

| | |
|---|---|
| **TITLE** | Moss-Mess-Reeves-Aquila Settlement Agreement |
| **FILE NAME** | AQUILA.MESS.MOSS ...(42919195.6).docx |
| **DOCUMENT ID** | d8df26ffcf697792215126bafbae8186724f28a0 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

Document History

**VIEWED**  
**02 / 02 / 2022**  
00:49:22 UTC  
Viewed by Corey Reeves (corey.reeves42@gmail.com)  
IP: 174.51.117.1

**SIGNED**  
**02 / 02 / 2022**  
00:49:34 UTC  
Signed by Corey Reeves (corey.reeves42@gmail.com)  
IP: 174.51.117.1

**COMPLETED**  
**02 / 02 / 2022**  
00:49:34 UTC  
The document has been completed.

Powered by HELLOSIGN